**RECORD NO. 10-2009(L)**
**CONSOLIDATED W/No. 10-2011**

IN THE

# United States Court of Appeals

### FOR THE FOURTH CIRCUIT

————————————

MARK B. LEVY;
STANLEY S. LEVY,

*Plaintiffs-Appellants,*

v.

CITY OF NEW CARROLLTON, *et al.,*

*Defendants-Appellees.*

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND/AT GREENBELT
(The Honorable Deborah K. Chasanow, Judge)

————————————

**OPENING BRIEF OF APPELLANTS**

————————————

Michael Wein
LAW OFFICES OF MICHAEL WEIN
Belle Point Office Park
7829 Belle Point Drive
Greenbelt, Maryland 20770
(301) 441-1151
weinlaw@hotmail.com

*Counsel for Appellants*

# TABLE OF CONTENTS

**Page**

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.....1

CORPORATE DISCLOSURE STATEMENT..............................................1

ISSUES PRESENTED ……………………….…....…………..………...2

STATEMENT OF THE CASE AND FACTS…….…………….…....…………...4

A. STATE COURT PROCEEDINGS PRIOR TO REMOVAL TO FEDERAL
   COURT.......................................................................................5
B. PROCEEDINGS IN FEDERAL COURT...................................21
C. MOTION FOR RECONSIDERATION AND FURTHER RULINGS BY THE
   TRIAL COURT..........................................................41
D. LEVY IV FILING (8:09-cv-02552-DKC)....................................45

SUMMARY OF ARGUMENT....................................................47

ARGUMENT ………………………………………………....………...52

      I.      THE TRIAL COURT ERRED THROUGH: (1) ISSUING A RULING GRANTING MOST BUT NOT ALL OF THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WHEN PURSUANT TO A PREVIOUS COURT ORDER, THE MAGISTRATE JUDGE WAS STILL ADDRESSING DISCOVERY DISPUTES, A 30(b)(6) DEPOSITION HAD NOT BEEN COMPLETED ON THE NAMED DEFENDANT'S MAIN CORPORATE DESIGNEE, AND REASONABLE RELIANCE BY APPELLANT WAS THAT THERE WOULD BE TIME GIVEN TO FILE A SUPPLEMENTAL OPPOSITION TO SUMMARY JUDGMENT, (2) THAT THIS ERROR WAS EXACERBATED BY THE TRIAL COURTS' REFUSAL TO CONSIDER THE DRAFTED RECONSIDERATION TO INCLUDE ADDITIONAL CONTENDED DISPUTES OF MATERIAL FACT, THE MAGISTRATE JUDGE'S

'MOOTING' OF ALL PENDING DISCOVERY MATTERS DUE TO THE PREMATURE TRIAL JUDGE'S RULING, AND AFFIDAVIT OF PENDING DISCOVERY, AND (3) THE TRIAL COURT CLAIMING THAT THEY COULD NOT AND WOULD NOT CONSIDER ANY OF THESE MATTERS, BY RELYING UPON THE LIMITED EXCEPTIONS DELINEATED IN CASE LAW UNDER FRCP 59    AND    NOT    THE CORRECT AND APPLICABLE STANDARD OF CONSIDERATION AND REVIEW UNDER FRCP 54(B) THAT PERMITS JUDICIAL DISCRETION TO BE EXERCISED ON NON-FINAL JUDGMENTS..............52

    a. **Standard of Review**..........................................................52

    b. **The Trial Court Erred through its Erroneous Application of the Limited Standard Applicable to Reconsideration Motions in FRCP 59, and Determining that it Did Not Have Discretion to Consider the Appellant's Motion on Reconsideration With Attached Exhibits (or were otherwise 'Mooted' by the Magistrate Judge)**..................................................................................58

II.    **THE TRIAL COURT ERRED IN BOTH FAILING TO PERMIT LEAVE TO AMEND THE COMPLAINT BASED UPON A §1983 CLAIM AGAINST APPELLEES DAVID LADD AND NEW CARROLLTON THAT INVOLVES SEPARATE CONSTRUCTIONAL VIOLATIONS THAT TRANSPIRED AND DISCOVERED AFTER THE FACTUAL ALLEGATIONS UNDERLYING THE LEVY II AND III COMPLAINTS, OR ALTERNATIVELY COMPLYING WITH THE APPLICABLE STATUTE OF LIMITATIONS TO ALLOW THIS NEVER ADJUDICATED CAUSE OF ACTION  TO BE TRIED SEPARATELY IN THE LEVY IV COMPLAINT**....................60

    a. **Standard of Review**............................................................60

    b. **The Court Erred in not Exercising Discretion in Permitting Leave to Amend**..................................................................61

    c. **Alternatively, the Trial Court Erred in Dismissing the Entirety of the "Levy IV" case, as the Separately filed Complaint was Filed within the Applicable Three (3) Year Statute of Limitations, and did Not Constitute *Res Judicata***...............62

**III.    THE TRIAL COURT ERRED IN EXCLUDING THE POLICE PRACTICE EXPERT WITNESS HIRED TO TESTIFY TO MATTERS DESCRIBED IN HIS REPORTS, EVEN THOUGH THERE WAS AN AGREEMENT TO SUPPLEMENT THE ORIGINAL REPORT IN THE RECORD AFTER ADDITIONAL DISCOVERY HAD TAKEN PLACE OF REVIEWING THE DEFENDANT OFFICER'S DEPOSITIONS(AND ANY ERRORS WERE INADVERTENT AND NON-PREJUDICIAL BETWEEN PARTIES), WHICH WAS DONE BY APPELLANT, JUSTIFYING A REVERSAL ON A NUMBER OF SUMMARY JUDGMENT DETERMINATIONS THAT WERE UNSUSTAINABLE BASED ON THE EXPERTS REPORT, AS WELL AS THE EXCLUSION OF THE EXPERT WHO WOULD HAVE OPINED AT TRIAL ON APPELLEE'S UNREASONABLE ACTIONS BASED ON HIS EXPERIENCE ON POLICE PRACTICES, JUSTIFY A NEW TRIAL ON THE TRIAL ON THE §1983 ACTION WHICH TOOK PLACE.......67**

**A. Standard Of Review...............................................................................67**

**B. As There Was No Violation Of The Scheduling Order, In That The Parties Agreed To The Report Being Filed When Sufficient Discovery Had Been Completed, Permitted Explicitly By Frcp 26, The Trial Court Erred In Excluding The Plaintiff's Expert Witness, Particularly As Any Error Was Harmless In The Court's Assertion That The Report Itself Was Six (6) Weeks Late.................................68**

**CONCLUSION. …………………………………………….......……………73**

**STATEMENT IN SUPPORT OF REQUEST FOR ORAL ARGUMENT.........…75**

**CERTIFICATE OF COMPLIANCE WITH RULE 32 (a)……………........…..77**

**CERTIFICATE OF SERVICE……………………………………........…78**

**PERTINENT PROVISIONS…………………………………………..........…79**

# TABLE OF CITATIONS

**Page**

## Federal Cases

*Aetna Casualty and Surety Co., v. The Wallace and Gale Co.,* 2002 WL 32122507 (D.Md. 2005)..................................................................................57

*Am. Canoe Ass'n v. Murphy Farms, Inc.,* 326 F.3d 505 (4th Cir. 2003)...........55, 56

*Bates v. Twp. of Van Buren,* 459 F.3d 731 (6th Cir. 2006)...................................61

*Cooter & Gell v. Hartmarz Corp.,* 496 U.S. 384 (1990).......................................54

*Curtis v. Citibank, N.A.,* 226 F.3d 133 (2nd Cir. 2000). ........................................63

*Equal Rights Ctr. V. Niles Bolton Assoc.,* 602 F.3d 597 (4th Cir. 2010)................61

*Fayetteville Investors v. Commercial* Builders, Inc., 936 F.2d 1462 (4th Cir. 1991)..................................................................................55, 56

*Foreman v. Unnamed Officers of the FBI,* 2010 U.S. Dist. LEXIS 121532 (D. Md. 2010)..................................................................................55

*Gridley v. Cleveland Pneumatic Co.,* 127 F.R.D. 102 (M.D. Pa. 1989))...............59

*Mateti v. Activus Fin., LLC,* 2009 U.S. Dist. LEXIS 99869 (D. Md. Oct. 27, 2009)..................................................................................55

*Mayfield v. NASCAR,* 2010 U.S. Dist. LEXIS 136753 (D. W.N.C. 2010)............57

*Mayfield v. NASCAR,* 2010 U.S. Dist. LEXIS 136973 (Dis. Ct. W. N.C., December 13, 2010)..................................................................................61

*Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S 1(1983)..............56

*Phillips v. Phillips,* 91 F.2d 724 (4th Cir. 1990).....................................................59

*Power Paragon, Inc. v. Precision Tech. USA, Inc.,* 2008 U.S. Dist. LEXIS 109720 (E.D. Va. 2008)...................................................................................60

*Rodriguez v. MEBA Pension Trust,* 956 F.2d 468, *vacated en banc, and dismissed as moot as settled,* 978 F.2d 1334 (4th Cir. 1992)...................................................54

*Sandcrest v. Cumberland Co. Hospital System,* 853 F.2d 1139 (4th Cir. 1988).....62

*Seoul Broadcasting Sys. International Inc. v. Young Min Ro,* 2011 U.S. Dist. LEXIS 52016 (D. E.D.Va., Dec. May 16, 2011)......................................................57

*Sensormatic Security Corp. v. Sensormatic Electronics Corp.,* 329 F.Supp. 2d 574 (D.Md. 2004)...................................................................................63

*Shrewsbury v. Cyprus Kanawha Corp.,* 183 F.R.D. 492 (S.D.W.Va. 1998)..........59

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.,* 318 F.3d 595 (4th Cir. 2003)...................................................................................67

*Sterlin v. Biomune Sys.,* 154 F.3d 1191 (10th Cir. 1998). ....................................61

*Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.,* 197 F. Supp. 2d 298 (D. Md. 2000)...................................................................................59

*United Food & Commercial Workers v. Marval Poultry,* 876 F.2d 346 (4th Cir. 1989)...................................................................................54

*United States v. Pittman,* 209 F.3d 314 (4th Cir. 2000). .......................................61

*Wilson v. Lakner,* 228 F.R.D. 524 (2005)...............................................................36

## Federal Statutes and Rules

18 U.S. C. §1961 *et seq*..........................................................................15

42 U.S.C. §1983...........................................................................*passim*

Federal Rule of Civil Procedure 26...............................................*passim*

Federal Rule of Civil Procedure 30...............................................*passim*

Federal Rule of Civil Procedure 37..................................................................67, 72

Federal Rule of Civil Procedure 54................................................................*passim*

Federal Rule of Civil Procedure 56................................................................*passim*

Federal Rule of Civil Procedure 59................................................................*passim*

Federal Rule of Civil Procedure 60................................................................*passim*

Advisory Committee on the 2003 Amendments of FRCP 26...............................72

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The basis for subject matter jurisdiction is found and proper in this Court under 28 U.S.C. § 1291. The United States District Court for the District of Maryland entered its final order on July 30, 2010, and Appellants Mark and Stanley Levy's Notice of Appeal was filed on August 27, 2010.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1. of the Federal Rules of Appellate Procedure and Local Rule 26.1, Mark and Stanley Levy, who are the appellants in this case, makes the following disclosure:

1. The appellants in this case are individuals and not a publicly held corporation or other publicly held entity.

2. There is no publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation.

3. The appellant is not a trade association.

4. The case does not arise out of a bankruptcy proceeding.

1

## <u>ISSUES PRESENTED</u>

**Issue 1:** Whether the District Court judges erred when after the Trial judge issued an Order delegating to the Magistrate judge "all discovery and scheduling matters," while the Magistrate judge was still ruling upon pending discovery disputes on the upcoming and unfinished 30(b)(6) deposition of the named Defendant to be followed by a Supplemental Opposition, the Trial judge suddenly issued a ruling granting most of the Defendants' Motion for Summary Judgment; this error was then exacerbated by the Magistrate judge denying the pending motions as 'moot' and the Trial and Magistrate Judges' denial without consideration of the merits of the timely "Motion for Reconsideration" (noting additional legal and factual bases upon which Summary Judgment should be denied and unfinished discovery confirmed by affidavit), because the Court contended that they did not have 'discretion' to consider the Reconsideration motion under the limitations of FRCP 59, instead of the lesser burden  of the legally applicable FRCP 54(b).

**Issue 2:** Whether the trial Court erred in (1) not permitting, at the request of the Appellees based on discovery concerns prejudicing the existing case, an amendment of the Complaint in Appeal 10-2009 to

2

include the new §1983 Claims against Defendants David Ladd and New Carrollton *inter alia* involving acts of Officer Ladd brandishing a weapon against Appellant Mark Levy at a 7-11 store, the day before a State Court trial between Levy and New Carrollton, and months subsequent to the acts in the 10-2009 case Complaints, and/or (2) subsequently dismissing, in violation of the applicable three year Statute of Limitations for §1983 actions, the Complaint in Appeal 10-2011, contending *res judicata* applied based on the earlier unsuccessful attempt for Leave to Amend the Complaint, even though there was never any adjudication on the merits of the Claim in Appeal 10-2009.

**Issue 3:** Whether the trial Court erred in excluding Appellants' police practice expert witness based on a purported schedule order violation in not earlier presented a 'final report' that was provided when discovery was still ongoing and prior to any Summary Judgment rulings, when the Appellants were acting in good faith accord with what was believed to be the then-agreement of parties and FRCP 26(A)(2)(b) "[requiring a written report accompany the expert disclosure] unless otherwise stipulated or ordered by the Court," the Report explicitly rejected several key rulings later issued in the Motion for Summary judgment determination, and the

3

harmless prejudice associated with the trial which would not take place

for another 24 months on the merits of the remaining Claims.

## STATEMENT OF THE CASE AND FACTS

This Appeal comes from various lawsuits between Mark Levy (hereinafter

"Levy") and the City of New Carrollton (hereinafter "City"[1]), a municipality

located in Prince George's County, Maryland, including various past and present

employees and officials of the City. Interactions between the City and Mark Levy[2]

have been mostly ongoing since the first suit was filed in 2000, based on a various

causes of action tracing back to 1997 from a series of tickets, towings, and even

arrests of Mark Levy[3], ostensibly over a dispute about his vehicles parked in the

---

[1] As much of the appeal relates to the Motion for Reconsideration ruling that applies to all the Co-Defendants in the case, whom together form the 'Appellees,' this term is used frequently in this appeal, for clarity purposes, as it is respectfully 'clearer' than other terms that would otherwise be used.  This is despite its disfavored status in appeals in this Court. *See* FRAP 28(d).  Additionally, the term 'appellees' was used frequently cited in the Court of Special Appeals decision that is summarized to this Court, to simplify some of the lengthy, yet relevant, procedurally history in the matter, and is therefore appropriate to be similarly used in this appeal.

[2] This Appeal has two (2) Appellants, Mark Levy and his father Stanley Levy. However, Stanley Levy's role is more limited in the overall history of the parties, as it was due to the contended illegal and unconstitutional search of one of Stanley Levy's vehicles (App. 251)  that made him a proper Plaintiff in the matter.

[3] There have been at least twenty (20) legal actions instituted through tickets, towings, searches, and arrests of Mark Levy that have transpired from 1999 though 2006.  In each case, Mark Levy challenged the legal action in Court, and the charge or ticket was dismissed, or found not guilty.

vicinity of his house.   In this appeal, are three (3) suits consolidated—8:06-cv-03304 (referred to herein and at trial as Levy II involving incidents from 2002); 8:06-cv-2598 (referred to herein and at trial as Levy III involving incidents from 2006); and 8:09-cv-2552(referred to herein and at trial as Levy IV).  Levy I is not part of this appeal, as it remained in State Court, with the dismissal affirmed on appeal. (App. 85, 803, 951) Levy II and Levy III, after removal by the Appelees from the Circuit Court for Prince George's County, were then consolidated, with the Levy III case involving primarily police officers of the City, as the lead case. (App. 5) (Docket Entry 15, Granting Motion to Consolidate)  Levy IV was separately filed in 2009, and upon dismissal at the District Court, was consolidated for Appeal purposes.

## STATE COURT PROCEEDINGS PRIOR TO REMOVAL TO FEDERAL COURT

Part of the reason the case of Levy II filed originally in 2002 is still pending, is that the case was earlier dismissed in State Court prior to any discovery taking place, and it took an appeal to the Court of Special Appeals of Maryland in order to get a reversal to argue these matters in Court. (App. 90-146)   The unreported decision by Judge Ellen Hollander, then of the Court of Special Appeals, provides

the backdrop of the case history and issues, up through the decision dated August

11, 2005.  (App. 90)

> "This appeal is rooted in an alleged personal "vendetta"
> against Mark B. Levy, appellant, by various officials and
> employees of the City of New Carrollton ("the City").
> (App. 91)  Levy brings his second appeal to this Court:
> his first appeal did not arise out of the identical case.  *See
> Levy v. City of New Carrollton,* No. 2058, September
> Term 2001 (filed August 20, 2003)(unreported)(Greene,
> J.) ("Levy I"). [4]    (App. 91)

> Levy now appeals from an order of the Circuit Court for
> Prince George's County, dismissing his complaint
> against the City and appellees Andrew C. Hanko, the
> City's Mayor; City Council Members Sarah C. Potter,
> John A. Schaffer, Raymond Garvey, and Rose Marie
> Hurdle (the "Council Members"; and City Code
> Enforcement Officer Jeffrey Hughes [who "is the only
> one of the current appelees who was not sued in Levy I"].
> The underlying complaint ("Levy II"), filed on
> September 23, 2022, initially included claims for
> malicious prosecution (Count 1); violations of State
> constitutional rights (Count II); and false imprisonment
> (Count III).... *Id.*

….

> "Before reviewing the facts of the instant case, we shall
> review briefly Levy I, because it provides context with
> respect to Levy II. (App. 92)

> Levy I was filed in the Circuit Court for Prince George's
> County on August 18, 2000.  In that case, appellant sued
> the City, the Mayor, the Council Members, City Code

---

[4] A copy of this decision in Levy I can be found within the Record of this Case as
well. (App. 412)

Enforcement Officers Joseph C. Welch and John R.
Wright: Prince George's County Police Officer John
Coe; and Prince George's County Police corporal
Douglas Easter.   Levy I was spawned by appellant's
prosecution and subsequent acquittal on charges that he
assaulted Wright on December 2, 1997. Levy sued the
[Defendants in Levy I] for trespass...malicious
prosecution…violation of State constitutional
rights…and…false imprisonment." (App. 92-93)

Of relevance here, Code Enforcement Officers Welch
and Wright asserted lack of notice under the Local
Government Tort Claims Act[…]  Thereafter, in October
2001, the circuit court dismissed all of the counts against
all of the defendants.  Levy's appeal to this Court
culminated in a fifty-page opinion authored by Judge
Greene.  We affirmed the dismissal of appellant's claims
against the City, the Mayor, and the Council Members,
but reversed the dismissal of appellant's claims of
trespass against Weight,, Welch, and the City, as well as
appellant's malicious prosecution claim against Wright.
*See Levy I,* slip op. at 2.  Among other things, the Levy I
Court concluded that the circuit court erred by dismissing
Levy's claims against Wright based on lack of notice
under the LGTCA[Local Governmental Tort Claims
Act]. *Levy I,* slip op. at 30, 38 n21, 39 n23.  Therefore,
we remanded for further proceedings." (App. 93)
….

"Levy II was initiated while Levy I was pending in this
Court.  Whereas Levy I was rooted in Appellant's claim
for malicious prosecution  for the alleged assault of
Wright on December 2, 1997, Levy II contains a claim
for malicious prosecution rooted in Levy's prosecution
for an assault on Hughes on April 17, 1999.  In Paragraph
10, Levy averred:

7

10. That the City and its employees and officials on or about September 23, 1999 commenced and embarked upon a malicious campaign and conspired to embarrass, humiliated, endanger, harass, and injure the Plaintiff without probable cause therefore, as exemplified by the facts stated herein below;[5] (App. 95)

Further, appellant asserted in Count 1 of Levy II:

68. That on or about May 27, 1999 the Defendant Jeffrey M. Hughes caused to be issued a warrant for the arrest of the Plaintiff based on the application of Statement of Charges executed by him on April 19, 1999 in which it is alleged that on or about April 17, 1999 the Plaintiff committed an assault in the second degree on Jeffery Hughes; the Plaintiff was thereupon arrested on September 24, 1999.  [It is further stated that Hughes was acting within the "scope of his employment, as well as individually" as well as that on April 2, 2001 "the Prosecution entered the case as Nolle Prosequi and the Plaintiff was thereupon discharged" and that Defendants "acted with malice towards the Plaintiff and without probable cause in having the Plaintiff arrested, jailed, and prosecuted."]  *Id.* [6]

---

[5] A large basis of this assertion traces to the audio recording that was eventually located by Mr. Levy of a December 15, 1997 meeting between the City Council, Mayor, and employees where Mr. Levy, his vehicles, and refusal to pay the fines issued on them were discussed, and the City's desire to "nail him," (App. 2539) including discussion of how when a District Court Commissioner initially refused to find probable cause for 2nd Degree assault charges of the Code Enforcement Officer, it was suggested that they should "shop" Commissioners, to find one who would find that there was probable cause. (App. 2572) A copy of the minutes and transcript for this meeting is included in the Record of this case.  (App. 2348)

[6] It is also stated in the Complaint for Damages in Levy II and Levy's affidavit, that the actual 'assault' charges arise, at most, from Levy allegedly spraying water from a hose while he was in the process of watering shrubs from his home, onto the Code Enforcement Officer.  (App. 214, 2123)

Further noted in the historical summary given by Judge Hollander in Levy II

was that particular attention was given by the City against Levy for his possession

of two GM vans, which included

> "[T]icketing appellant's vehicles on four separate
> occasions and failing to provide him with a court date to
> contest the infractions; unlawfully towing appellant's
> vehicles nine times between August 19, 1997 and May
> 27, 1999; passing "an invalid ordinance" that barred dual
> wheel vehicles from parking on City streets;  filing false
> criminal charges against appellant for assault and drug
> possession, leading to his arrest and confinement, and to
> several criminal trials (two for assault and one for drug
> possession); issuing housing infraction citations to
> appellant and witnesses in one of his assault trials; and
> expending the City limits, without authorization, to
> include the streets where Levy was parking his vehicles
> to avoid the City's towing campaign against him.  Levy
> alleged the vehicles were towed from various locations,
> including the front of his home in the City, from a
> County road that had been located outside the City limits
> under the City enacted legislation incorporating that
> street. (App. 96-97)

> Levy also included facts pertaining to his earlier
> prosecution for the alleged assault of Wright.  He
> claimed that, after he successfully defended against four
> tickets, Wright appeared before a Commissioner seeking
> a warrant for appellant's arrest for the alleged assault of
> Wright and John Lee. According to Levy, when the
> Commissioner of the Hyattsville district court declined to
> issue the warrant, the City and Council members met
> with the City's attorney on December 15, 1997 to
> "discuss[] the refusal of the Commissioner at Hyattsville

9

> to issue a warrant" for Levy's arrest.  He averred that
> "[t]hey also discussed ways in which they could enhance
> the facts and shop for a commissioner at Upper
> Marlboro…" (App. 97)

> On or about December 31, 1997, the City  and Wright
> was "able to get another Commissioner at Upper
> Marlboro to sign a warrant for Plaintiff's arrest….A jury
> later acquitted Levy of all charges."   (App. 97-98)

After the suit against Code Enforcement Officer Wright, the City of New

Carrollton and other employees and officials of the City was filed and served, the

acts underlying the case known as Levy II began.

> "That on or about April 17, 1999, Defendant Code
> Enforcer, Jeffrey M. Hughes, who was hired on January
> 4, 1999, during the scope of his employment and
> individually was in Plaintiff's next-door-neighbor's yard,
> spying upon [Levy] and taking pictures of the Plaintiff
> through a gap in the Plaintiff's fence while [Levy] was
> watering his own shrubs.  Defendant Code Enforcer
> Jeffrey M. Hughes later claimed that Plaintiff committed
> an assault by spraying him with water from the hose,
> although the fence abutting Plaintiff's property was an
> eight (8) foot high wooden privacy fence made of
> overlapping slats[.]" (App. 98)

Appellees moved to dismiss Appellant's Complaint based on claims of

violation of the Local Governmental Tort Claims Act (LGTCA), governmental

immunity, public official immunity, and collateral estoppel.  *Id.*  These claims

were challenged by the Mark Levy's counsels at the Court of Special Appeals of

Maryland.   During the Motions hearing on the Motion to Dismiss, it was noted

some of the unusual timetable involved with the case, and how Levy I was related,

but simultaneously separate and apart from the Levy II case.

> [Counsel for Appellant] …Your Honor, the complaint is unusually long, and that is because it details a continuing course of conduct by not only the City of New Carrollton but the officials f the City of New Carrollton.  I would further argue---
>
> The Court: But the prior course of conduct was already resolved, perhaps not to your liking, but it was resolved.  It was resolved in court already, correct?
>
> [Counsel for Appellant] That case remains pending before the Court of Special Appeals.
>
> The Court:  All right.  It is on appeal.
>
> [Counsel for Appellant]  Yes.  (App. 103-104)
>
> ....
>
> But the detail of the [current] complaint is to reflect a continuing course of conduct by the named parties in that case.  Not only has it been long term, it is our contention that the current case that brings us to  court is no more than an extension of the previous actions that have occurred by the City.
>
> ....
>
> That's why we find ourselves with such a tortured complaint before what we are trying to do is establish for the Court the extended period of time, and for lack of a better word, the conspiracy that kind of went into this."  (App. 104)

11

Furthermore, the Court of Special Appeals' decision by Judge Hollander noted that counsel at argument "maintained that the City and Council Members did, indeed, participate in the arrest of appellant on September 24, 1999. He stated, "[t]here were City council meetings where [appellant] was mentioned by name, and there were discussions between the Code Enforcement Officer [i.e. Hughes] and Members of the City Council as to what to do..." *Id.*

The Circuit Court for Prince George's County, Maryland, prior to discovery, then granted "[A]ppellee's Motions to dismiss...agree[ing] with appellees that Levy was collaterally estopped from relitigating the factual assertions pertinent to Levy I." (App. 106)  As noted in the Court of Special Appeals decision, the Circuit Court reasoned in its Memorandum Opinion that dismissal was justified due to:

> Plaintiff's Complaint, in paragraphs ten (10) through sixty-six (66), sets forth in detail the history of a disagreement between the Plaintiff and the City of New Carrollton over whether the Plaintiff can park two vehicles he owns in the City of new Carrollton. After reviewing the two complaints, the Court finds that these facts alleged in the Complaint currently before the Court were similarly alleged in his prior Complaint. As such, this Court agrees with the defendants that the plaintiff is attempting to re-litigate factual allegations previously plead in [Levy I]. Thus, the only issues for this Court's consideration are those which stem from the September 24, 1999 arrest of the Plaintiff. All other factual allegations are fully litigated in [*Levy I*]. Therefore, the

12

> Plaintiff is collaterally estopped from re-litigating those
> factual issues a second time in the instant suit."  (App.
> 106)

There was also discussion in the Court's memorandum on LGTCA notice

and public official immunity. (App. 107-108)   Thus, "[o]n January 14, 2004, the

court issued an "Order of Court" memorializing its dismissal of appellant's claims."

(App. 108)

As further discussed in the Decision it was Appellant Levy's contention that

a primary basis justifying reversal was that in addition to the later determined

procedural fact that Levy I was reversed in part and remanded back to the Circuit

Court, and "therefore was not a valid and final judgment and issue preclusion was

not appropriate."  *Id.*  Furthermore, as background for the claims and procedural

history of the claims in this case, the decision  also addressed the status of the Levy

II case as focusing on,

> "Levy's contention that the illegal treatment he received at
> the hands of various low-level employees over the years
> was orchestrated by higher-ups, specifically the Mayor
> and the City Council members named as defendants.
> Hanko and the City Council members were directly
> involved in the earlier Wright prosecution of Levy when
> they met with the City Attorney and discussed Wright's
> foiled attempt to have an arrest warrant issued against
> Levy.  After Hanko and the city Council members were
> advised that a District Court Commissioner had refused to
> issue an arrest warrant for Levy, they directed at Wright

13

should continue to pursue the complaint until he could find a more compliant commissioner.

This evidence of direct participation by Hanko and the City Council members in a Levy criminal prosecution related to the earlier malicious prosecution of Levy for assault [of] Wright.  However, it constitutes circumstantial evidence that when a second code enforcement officer, Hughes, initiated another malicious prosecution for assault two and a half months after Levy was found not guilty of the Wright charges, that the Hughes prosecution was being pursued at the behest of the same individuals who orchestrated the prior, similar prosecution of Levy."  (App. 110)

After discussing the various standards and case law applicable to collateral estoppel, the Court of Special Appeals concluded,

"[w]e are satisfied that the court erred in concluding that, based on collateral estoppel, it could not consider in Levy II the allegations that were also set forth in Levy I.  The malicious prosecution case at issue in Levy I is not identical to the one presented in Levy II....To be sure, in Levy II appellant asserted some of the same factual allegations contained in Levy I, to establish that appellees have engaged in a continuous and ongoing course of conduct motivated by actual malice.  These allegations lend support to appellant's claim that the events at issue in Levy II were by design.  A common set of underlying facts may be pertinent to distinct causes of actions, however.  Because appellees failed to satisfy the first prong of defensive non-mutual collateral estoppel, we need not consider the remaining prongs.""  (App. 120-121)

14

The Court of Special Appeals then discussed the cases involving LGTCA and Public Official Immunity findings made also by the Circuit Court, but did not adjudicate the matter, and permitted the issue to be addressed by the trial Court on remand.  (App. 142, 146)

Mark Levy was now represented on remand by Counsels Timothy Maloney, Cary Hansel, and Kevin Dale of Joseph, Greenwald & Laake.  (App. 2939)  In the Local Rule 103.5 filing[7] by Appellees of Levy II, there are 108 filings done through December 19, 2006. (App. 27) At that time, the Levy I and Levy II  were scheduled for separate trials in October 2006.  (App. 76-77) However, due to a conflict of interest based on the underlying facts of what became "Levy III" that due to the "firm's prior representation of [Officer Marc] Butler, we are conflicted from litigating these matters further for the Plaintiff [Levy]."  (App. 74)  These events occurred a few months prior to the trial, in April and May 2006.

The facts of the Amended Complaint filed in Levy III, according to the originally filed Count for violations of 18 U.S.C. §1961 *et seq.* (Civil Racketeer Influenced and Corrupt Organizations Act (RICO)), were for actions;

> "As noted in the previous paragraphs and cases CAL 00-
> 19387 and CAL 02-222932, through at least March 4,

[7] Done later, after Levy III was filed, and Levy II was amended to include new Causes of Action for §1983 and Civil RICO.

15

1997, the City of New Carrollton and Defendants have engaged in a crusade against the Plaintiff, with scores of predicate acts, involving multiple unlawful arrests, multiple unlawful tickets, multiple unlawful searches of persons and property, and multiple unlawful seizures of persons and vehicles.  They have passed illegal ordinances and altered the stated property lines of the City, just to accommodate their cases against the Plaintiff.  They have conspired and aided and abetted in the fabrication of charges without probable cause against the Plaintiff.  The Plaintiff has proved victorious in Court for every single criminal and traffic citation given thus far...Even pending litigation has not dissuaded the Defendants from continuing with their crusade.  As soon as the City of New Carrollton obtained a police force with the authority to ticket, they began ticketing the Plaintiff and towing his vehicles.  Acting under the misimpression that the Plaintiff had 'lost' the previous cases (Which were actually reversed and remanded on appeal), this behavior indicates that the pattern of racketeering will continue for the foreseeable future, and that it was only due to the pending cases that there was any halt in this racketeering activity.  With the activation of a police force in New Carrollton, these racketeering activities have escalated, with the most recent predicate acts stated in the preceding paragraphs, describing how the entire police force at the time of the City of New Carrollton, acting at the apparent behest of the Mayor, went to the Plaintiff's home, went on his property, went inside and searched all of the Plaintiff's vehicles but one, tested all of these vehicles to create additional citations, towed a number of these vehicles, issued various traffic citations, all without permission, probable cause, or a warrant."  (App. 171-172)

16

The "preceding paragraphs" of the Complaint, referenced in the Civil RICO Counts, and the existing state of the litigation in September 2006, were as follows.[8]

On April 28, 2006, four (4) police officers from the New Carrollton Police Department, Officer Rice and Defendants Ladd, Lyew, and Butler, entered on the Plaintiffs' property to inspect Plaintiffs' vehicles. The Officers proceeded to inspect these vehicles without probable cause, consent, or a warrant. On April 28, 2006, Defendants ticketed three of Plaintiffs' vehicles with "Tow Stickers," having a tow date of May 1, 2006. On May 5, 2006, Defendants Butler and Lyew entered onto Plaintiffs' property to tow Plaintiff Mark B. Levy's Corvair. They then ticketed the Corvair for being "Unregistered/Abandoned." The Corvair was neither unregistered nor abandoned and the Defendants had no probable cause to believe that the Corvair was either unregistered or abandoned. (App. 158-159)

On May 5, 2006, Defendants Butler and Lyew further ticketed Plaintiff Mark B. Levy's one-ton van and ¾-ton van on or near his property for being "Parked over seventy-two hours." In fact, both vans were driven regularly. Defendants Butler and Lyew then towed Plaintiff Mark B. Levy's Corvair. Defendant Sgt. Butler informed Plaintiff Mark B. Levy that the Corvair was being towed because they "decided to," and that Plaintiff was instructed to never bring the Corvair back to his property or even the City of New Carrollton. Plaintiff Stanley S. Levy walked over to Defendant Butler, and asked him "Does the mayor know about this?" Defendant Butler, replied "As a matter of fact, I spoke

---

[8] Although the Appellees would disagree with the factual and legal inferences from the factual averment summary cited in the Levy III complaint listed in Paragraphs 16-36 of the Complaint, these statements were later verified as accurate in the depositions of Mark Levy, as well as his parents Stanley and Shirley Levy. (App. 1530-1613, 2134-2143)

with the Mayor this morning and told him I'm coming over here today.  And the Mayor said 'good.'"  Plaintiff Mark B. Levy was required to pay the city $75.00 to release the Corvair and another $185.00 for towing charges.  Plaintiff then returned the Corvair to his property.  (App. 159)

On May 10, 2006, Defendants entered onto Plaintiff's property.  Defendants approach Plaintiff's boat and threaten to tow the boat, yelling words to the effect of "Are you gonna tow this boat out of here right now, or am I?"   While on Plaintiff's home and property, Defendant Lt. Ladd ordered Plaintiff to leave his property and to stand on the street outside Plaintiff's property. Plaintiff refused to leave his property.  After Plaintiff refused to exit his property, Defendant Lt. Ladd threatened to tow Plaintiff's vehicles, boat, and RV. With Defendants Butler and Lyew standing by him, Defendant Ladd states over and over again to the Plaintiff that "You're not dealing with Code Enforcers anymore." While on Plaintiff's property, Defendant Lt. Ladd noticed the returned Corvair, commenting "Why'd you bring that back.  You're not gonna win, you're not gonna win." While on the Plaintiff's property, Lyew demanded to see Plaintiff's driver's license, which the Plaintiff refused. Upon information and belief, these comments refer to the present ongoing civil proceedings involving the Plaintiff and various current and previous officials and employees of the City of New Carrollton. (App. 159-160)

While on Plaintiff's property, the Officers proceeded to open and inspect the Plaintiff's vehicles. The Officers boarded and searched Plaintiff's boat.  The Officers then boarded and searched the 1-ton and ¾-ton vans.  During their warrantless search of the vans, the Officers placed each van in gear and rolled the vans.  The Officers also entered the Corvair.  During the warrantless searches of the Plaintiff's vehicles, Defendant Lyew and

18

the other Officers, began operating the equipment on the vans, including the lights, horn, wipers.  Each van was put in gear, so that it rolled, and then the brakes were applied. The same was then done to the Chrysler LeBaron.  On May 10, 2006, the Officers also attempted to tow the boat and issued a parking ticket to the boat. In order to tow the boat, Officers stated that they had to tow and move Plaintiff's Chrysler LeBaron. Plaintiff had previously parked Plaintiff Stanley S. Levy's Cadillac on the property.  The Officers also searched the Cadillac owned by the Plaintiff's father, Stanley Levy. The Officers also opened the trunk of the Cadillac by activating the trunk release, and then searched therein without permission, warrant, or probable cause. The Officers forcibly opened Plaintiff's locked R.V. and searched every compartment within the R.V.  All of the equipment was then tested by the Officers apparently to see if they were working properly so as to issue further citations.  This was again, without permission, warrant, or probable cause.  (App. 160-161)


In addition to towing the boat and the LeBaron, the Officers issued moving tickets for operating unsafe vehicles for three (3) of Plaintiff's vehicles parked on his property. Plaintiff's Mother (Shirley Levy), then walked out of the house and was approached by the Officers. The officers handed her three moving citations for the cars that were parked on the family's property and informed her to hand them to the Plaintiff.  Defendant Ladd informed Mrs. Levy that the R.V. and Corvair were being towed, and that if any of the vehicles were brought back that they would be immediately towed again. Defendant Ladd said words to the effect "That he couldn't believe a judge found those vans legal to park." Upon information and belief, this statement refers to the G.M. vans which are the subject of the previous lawsuits involving the Plaintiff and Defendants.  Mrs. Levy then

19

informed the Officers that there was a present lawsuit involving the City and the Plaintiff, and that they should immediately leave.  Defendant Ladd replied with words to the effect of "The City won that law suit."  (App. 161-162)

Plaintiff Mark B. Levy had to pay $75.00 to release the boat from the city, and $300.00 for towing fees.  In addition, Plaintiff incurred $75.00 in fees for the moving of the Chrysler LeBaron.  The Officers, in their warrantless search without probable cause, remained on or about the property of the Plaintiffs' for about an hour and a half.  Plaintiff requested a trial date for the five tickets received. The trial date was scheduled for July 20, 2006 at 10:45 A.M. in Hyattsville. On July 20, 2006, Plaintiff Mark B. Levy was found "Not Guilty" by Judge Josef Brown for the five (5) tickets issued to him on May 10, 2006.  None of the Officers appeared during Plaintiff's trial.  Plaintiff was notified that his registration was to be suspended for the vans and Corvair as a result of the moving violation tickets issued.  The State Police have since voided these tickets issued by the Defendants. (162)

Counts of "Trespass to Land," "Trespass to Chattels," Malicious Prosecution," Maryland Constitutional Violations, "Civil Conspiracy," "Malicious Use of Process," "Vicarious Liability," and Civil RICO, were sought in the original Complaint, and §1983 violations were added in the First Amended Complaint. (App. 162-170, 264)   While a series of procedural moves regarding jurisdiction and removal were done by both parties at the State level, eventually, the Levy II

case was Amended to include a new Cause of Action for violations of §1983 and Civil RICO, and was removed by the Appellees to Federal Court. (App. 26, 220-223, 225) It was subsequently agreed by the parties that the Cases should be consolidated, and Judge Chasanow issued a "Paperless Order granting Motion to Consolidate and Consolidating for all purposes, DKC 2006-2598 and DKC 2006-3304 under Civil Action No. DKC 2006-2598 as lead." (App. 5)

**PROCEEDINGS IN FEDERAL COURT**

A Scheduling Order was subsequently issued by the District Court. (App. 232-236) The Initial Joint Status Report was then filed with the Court on January 17, 2007. (App. 237) In the Joint Discovery Status Report filed on September 14, 2007, it is noted that there were still outstanding discovery disputes over Interrogatories, "Depositions for five (5) of the nine(9) co-defendants have taken place," and the parties were still attempting to arrange a *de bene esse* deposition for a "critical third party witness." (App. 281-282) Additionally, it is noted with respect to "Expert Witnesses," that "Expert witnesses have been designated by the Plaintiffs in this matter. The Plaintiffs have acceded to the Defendants request for additional time to designate experts until further discovery has taken place." (App. 282) Furthermore, it was requested that the Current Discovery Deadline be

21

extended to November and December 2007, which was granted by Judge

Chasanow in a paperless Order.  (App. 6, 282)

A "Consent Motion to Modify the Scheduling Order" was subsequently filed

on November 16, 2007, noting *inter alia,* that there were still outstanding

depositions to be held, a "deposition scheduled to be taken in California" and that

the Levy I case (which otherwise might be consolidated with the Levy II and Levy

III cases in federal Court), was scheduled for oral arguments in the Court of

Special of Appeals.  (App. 285)  This Motion was then granted in a paperless order

by Judge Chasanow, with discovery due in February 2008, and Dispositive

Motions in March 2008.  (App. 6)

In the Joint Discovery Status Report filed in February 2008, is where major

disagreements begin to appear.  (App. 288-290)  There are detailed descriptions

given on the 30(b)(6) deposition of the named Defendant City of New Carrollton.

(App. 288-289)  The Expert Witness statement given is the same as in September

2007, while noting in addition that "Counsels have agreed to discuss in good faith

to create a mutually agreeable schedule for the expert witnesses."  (App. 289)

There was also disagreements on when Pretrial Motions on Summary Judgment

should be filed, with the Appellees "intend[ing] to file a motion for summary

judgment on or about March 28, 2008.   Plaintiffs recommend a later date of June

20, 2008 to accommodate the need to resolve the lingering discovery, discovery

disputes over non-production and the 30(b)(6) deposition of the City of New

Carrollton, expert witness reports, and the pending court case of Levy I in the

Court of Special Appeals of Maryland.  (App. 290).  As a result of these disputed

matters, on February 20, 2008, Judge Chasanow issued an "Order of Reference to

United States Magistrate Judge for "All discovery and related scheduling matter."

(App. 293)

On March 4, 2008, the Appellees filed a "Motion for Leave" to file a

Summary Judgment motion up to 75 pages.  (App. 294)  On March 20, 2008, the

Plaintiff's filed a "Motion to Compel Discovery" with the Court with Rule 104.7

Certificate.  (App. 297-298)  On March 21, 2008, the Plaintiff's filed a "Response

to Defendants' Motion for Leave" noting that there was no major argument against

the Appellees being permitted to file an overlong Motion for Summary Judgment

Memorandum, but that "Essentially, the dispute...is a disagreement between the

parties over the appropriate scheduling of this case, when there exist *inter alia*

substantial discovery disputes that have yet to be resolved, and should be resolved

before the parties begin filing dispositive motions with this Court...fair play should

permit the Plaintiffs to be permitted such time as is warranted to draft a proper

23

response when discovery has been finally concluded, to what presumably will be a well-written and thorough dispositive motion by the Defendants" (pp. 302, 303)

On March 21, 2008, Correspondence was directed to Magistrate Judge William Connelly, "[p]ursuant to Judge Chasanow's February 20, 2008 Order referring 'all discovery and related scheduling matter' to your Honor" and requesting a status Conference in the matter." (App. 306) It is noted that "[t]he time-sensitive nature of this request primarily involves the deadline that was noted in the November 15, 2007 status report with this Court for the filing of Dispositive Motions to be this coming Friday, March 28, 2008. "*Id.* Correspondence from Appellee's counsel noted that he was not available on the suggested dates of March 26 and 27, 2008, though "we will supply the Court with mutually acceptable dates." (App. 307)

On March 27, 2008, the Appellees filed a Rule 56 Motion for Summary Judgment, of 75 pages length. (App. 312-314) This Motion included 50 exhibits, totaling an additional 385 pages, for a total of about 460 pages. (App. 391-776) Also on March 27, 2008, (a few minutes later) in correspondence from the Appellant's counsel, it is noted "just as this Letter was to be electronically filed, the Defendants apparently have filed their Motion for Summary Judgment with this Court." (App. 777). It is noted in the correspondence that there had been a few

24

attempts to arrange a mutually agreeable date with the Appellees for the

Conference Call with Judge Connelly, and "I am somewhat perplexed at the

Defendant's Counsel' apparent intransigence in not arranging a timely status

conference with your Honor, so that your Honor is able to weigh in on what

appears to be a time-sensitive scheduling issue that should be resolved...."  (App.

777-778) "[B]y the Defendants insistence on using a disputed dispositive motion

deadline to file their Motion for Summary Judgment, this will potentially create

significant future confusion for this court in adjudicating any Motions for

Summary Judgments to be filed, as well as conflicting potentially with other

scheduling deadlines."  (App. 778)  A paperless Order was issued the next day by

Judge Connelly, "[s]uspending the March 28, 2008 dispositive pretrial motions

deadline established by the Order of November 19, 2007" and scheduling an April

1, 2008 with Judge Connelly's chambers. (App. 7)

Various issues were addressed at the Conference with Judge Connelly by

Appellant's Counsel.   "Number one [issue] I had d[ispositive] motion deadline.

Number three is the motion for sanctions on deposition, which I have not filed.

Number four would be a motion for sanctions on discovery, which I just received a

reply on March 19-20, which is 10 days or so ago.  The fifth would be the expert

witness issue.  The sixth would be the pending Levy I case, and the seventh is my

own unfortunate health and whether or not that should play a role in anything...I have had a fairly serious back injury, which I received in late [November].[9] Early in December, I was diagnosed with a herniated disk. ...So I am just putting it out there, the fact that unfortunately my back issues are fairly substantial. In fact...I probably should not even be working right now. That is out there. Certainly, if I have surgery it would probably be sometime in the summer but I cannot predict that at this stage. But...I cannot pretend that it is not there. I have exceptional back injuries." (App. 787-788)

After various discovery issues were discussed, Judge Connelly said "may I make a suggestion that perhaps we can streamline this process? I know the Court does have, according to local rules, a meet and confer provision and the requirement that you exchange formal motions to compel, but I find frequently in cases in which there are a number of outstanding issues, it might be more efficient just to dispense with that. (App. 793) After further discussion where the parties tended to agree on having a streamlined method for discussing discovery disputes with Judge Connelly, the discussion by Appellant's Counsel turned to the Motion for Summary Judgment that was just filed. (App. 796)

---

[9] The transcript inexplicably says 'July' but the Record, including the immediately following sentence noting the diagnosis being in December, demonstrate that it was November. (App. 1265)

"I kind of expressed some surprise just that the Defendants were seeking a motion for summary judgment when I...know that at least there are dispute in term of whether or not discovery is finished.  I mean there is case law...Courts generally—plenty of other jurisdictions that when there is open discovery or even discover that keeps pending, that the pending motion for summary judgment is premature.  I tried to go and get a ...status conference for other issues but...the[] [Appellees] did not even get an agreement or an order from the ocourt on the 75 page limit.  So, in my opinion, the Defendants should have wanted to have a status conference as well to at least get some permission from this court."   (App. 797)

There is then further discussion on "missing discovery" and how the Court "can grant additional time...if you honestly cannot answer the summary judgment motion with in the 30-day requirement, you can always ask Judge Chasanow.  This is not for me to decide because it is a dispositive motion."  *Id.*  It is suggested by Judge Connelly that a short motion with the Court should be sufficient. (App. 798)

Mr. Wein:  Right.  I mean it seems to me it will probably, as I told Your Honor and Judge Chasanow---I would have to make two motions.

The Court:  Well, that is fine, but, you know, Mr. Karpinski can file his motions for summary judgment when he views--finds it appropriate.

Mr. Wein:  Well...but as your Honor noted...there is a rule if there is discovery outstanding, that is the basis for denying a motion for summary judgment.  So...it seems like it took more stress on the court system where...there are going to be supplemental motions for

27

summary judgment, I have to file these motions because I do not know exactly when discovery is going to be resolved." *Id.*

After Mr. Karpinski notes that it would at a minimum be 6 months before any rulings on the Motion for Summary Judgment, the conversation then turned to the issue of the police practices expert witness, Joseph Key. (App. 799-800)

> Mr. Wein: I faxed a copy—I mailed out a copy of an expert witness, Joe Key, yesterday to Mr. Karpinski. There really has not been much conversation with me and Mr. Karpinski on that. I do not know--- there had been some agreement---almost a year in terms of the expert witnesses. The Judge made it two...Mr. Karpinski, are you—and I do not know if you have thought this through yet yourself. I mean were you planning on having your own expert witness? Were you planning on getting a deposition of Mr. Key? That is one thing.
>
> ....
>
> Mr. Karpinski: Are you suggesting that Mr. Key cannot draft a 26(a)(2) report based upon the limited discovery issues that are outstanding?
>
>
> Mr. Wein: Well, I am letting you know that [I faxed the report to you yesterday.] I am just saying to you, do you want to just kind of get something in writing in terms of whether or not you intend have your own expert witness or whether you depose---?
>
> Mr. Karpinski: You know, I need to look at that entire issue. I mean, you know, the case has been pending for a long time...We filed for a motion for summary judgment because of how long it has been pending.... (App. 801)
>
> ...

28

Mr. Karpinski:  [E]xcuse me, Mike.  When was your...report due?

Mr. Wein:  I filed the original—I gave a name of Joe Key.

Mr. Karpinski:  But when was the report due?

Mr. Wein:  Well, I did a supplemental—I did the original one.  You said that is not sufficient.  I said well, I need to have more discovery and then there was an agreement to continue until the end of discovery.

Mr. Karpinski:  That is what I need to go back and look at because that was probably nine months ago.

Mr. Wein:  It was probably a year ago actually.

Mr. Karpinski:  Okay.  Well unfortunately, Mike, we have never—I do not remember what I agreed to a year ago.  If that is what I agreed to, I will live up to what I agreed to---[...] I will look at it.  I will get you a response by Friday on what Defendants position is with respect to Mr. Key; whether we will simply d[e]pose him, whether it will remain a rebuttal expert or whether we will be seeking relief from the Court on the issue."  (App. 802-803)

On April 21, 2008, Appellants filed correspondence with Judge Connelly on pending discovery disputes.  (App. 813)  This includes attachments concentrating on the FRCP (30(b)(6) deposition which was initially noted on September 30, 2007, with earlier correspondence with the Appellees. (App. 815-817)  A consent Motion was filed for additional time for the Appellant to file an Opposition to Motion for Summary Judgment until June 27, 2008, which was subsequently granted by Judge Chasanow in a paperless Order.  (App. 8, 834-835)

29

On April 24, 2008, Defendant's filed a Motion to Exclude Plaintiffs'
Experts.[10] (App. 836-840) Attached to this Motion were the "Plaintiff's Expert
Witness Designation Pursuant to FRCP (26)(2). (App. 841-845) Charles J. Key's
resume, Court Qualification and Deposition Lists attached to the report, and in the
resume noting *inter alia,* that he has "consulted in hundreds of use of force
incidents and other police practices cases..." (App. 846) This was followed by
correspondences in late March and early April 2007, where it is noted that "as a
confirmatory letter of our telephone conversation...although you have identified
expert witnesses, you have not provided any reports, as required by the Federal
Rules of Civil Procedure. Rather than filing a motion with the court, we agreed
that I would have an extension of time until thirty (30) days after I have receive
reports form your experts to designate rebuttal witnesses." (App. 891)

Mr. Key's Expert witness report noted that he relied on twenty-one (21)
bases of documentation, including the depositions of all the Defendant Officers in
the case. (App. 896). In Mr. Key's Report, six (6) opinions are rendered, of which
two (2) were that the Officers' acted "objectively reasonable". (App. 898-900)
However, four (4) expert opinions rendered, found that the Officers' actions were

---

[10] This Appeal does not challenge the exclusion of Michael Levine as an expert,
but challenges the Court's exclusion of the Police Practice Expert, Charles J. Key,
Sr.

"not objectively reasonable and not consistent with accepted standards of police practices, policies and training." (App. 901-906) These activities had direct relevance to the trial in this case on the remaining §1983 Count, as well as the propriety of (1) the towing of Levy's boat, (2) issuing various Safety Equipment Repair Orders (SEROs) for a non operated vehicle, (3) searches and entering of the Appellants' vehicles, and (4) and the Officers' continuous failure to Appear in Court to Support their numerous traffic charges. *Id.*

Levy filed an Opposition to the Motion to Strike Expert Witnesses on May 27, 2008. (App. 927) Included as attachments were correspondences between Counsels, Joint Status Reports which discussed the Expert Witnesses, and Plaintiff Mark Levy's Answer to Interrogatory #13. (App. 935-954)

A Consent Motion for Extension of Time was filed by Levy on June 13, 2008, subsequently granted by Judge Chasanow, noting *inter alia* that Appellant's Counsel was scheduled for back surgery on July 9, 2008. (App. 9, 957) A Motion for Leave to File Second Amended Complaint, with attachments was then filed on August 14, 2008. (App. 960) On September 15, 2008, the Appellees filed an Opposition to the Motion For Leave to File Second Amended Complaint. (App. 1028) Of note to the instant appeal, is that the arguments presented as headings by the Appellees against the grant of the Motion for Leave consisted of Defendants

31

would be Prejudiced by Lack of Opportunity to Conduct Discovery, (2) Plaintiff's

Allegations Alter the Nature of the Claims, and (3) Plaintiff's Actions are a Bad

Faith Attempt to Delay.  (App. 1032, 1034, 1035)

Various discovery matters were then addressed in correspondences and

filings with Judge Connelly and between Counsels throughout the fall of 2008.

(App. 11, 1037-1211)  In particular, the Correspondence on October 6, 2008,

focused upon the 30(b)(6) Deposition of the City by Appellant.  (App. 1212)  A

telephonic conference was then scheduled with Judge Connelly on October 2008.

(App. 1257)  With respect to the 30(b)(6) deposition, it is noted by Appellant's

Counsel that,

> "...[T]he 30(b)(6) was noted appropriately in September [2007].  I[]
> did not get an official objection [on the 30(b)(6) deposition] until
> November [2008].   I sent correspondence which was faxed and
> attached in the most recent letter to Your Honor, saying how
> important it was and how definite I need to have a 30(b)(6) and it was
> also noted in the February 15th status report as well.  Then there was
> the informal matter where Your Honor said we could try to get this
> resolved informally.  Unfortunately, when I injured my back shortly
> after Thanksgiving, that obviously was the real weight and had some
> sort of play in terms of why this was not handled somewhat earlier.
> But there had never been any conscious or unconscious attempt to not
> have this resolved." (App. 1264-1265)   .

The Court:  All right.  Mr. Karpinski, you want to close?

Mr. Karpinski: Your Honor, every time I have had this come up
before, I have agreed that the city will be bound by the testimony of
those individuals who have been deposed but I do not know if Your

32

Honor has it in front of you but it is Exhibit 1 to our ...September 17 letter to your Honor.

The Court:  I have it.  It is the actual notice of the taking of the deposition.  I mean, I have to tell you that my---I probably am going to order a 30(b)(6) for the City but my problem is that the scope is just grossly overbroad..." (App. 1265)

This was followed by a lengthy discussion of what is appropriate to seek as far as the scope of the 30(b)(6) deposition, and a general agreement that some of the categories would be redone by the Appellant, that there was a specific concern on lack of production by the City of financial documents that had been requested, and on who would be the designees chosen by the City.  (App. 1268-1287)  Judge Connelly then noted "[o]ne final thing, then we are going to end.  I am very, very insistent that the discovery gets closed and that we get the response to the summary judgment motion.  Then Mr. Karpinski can file his reply.  I want it all done by the end of the year. " (App. 1288) Mr. Karpinski then noted he is Counsel for the Board of Elections of Montgomery County, Maryland, which would keep him busy in November.  (App. 1289)  Appellant's Counsel then noted that his health issues were still affecting his ability to work full time.  (App. 1289-1290)  Judge Connelly then remarked that Judge Chasanow "has got to get this summary

33

judgment motion ruled on not later than March 30, 2009[11]...and she needs time

because it is a lengthy summary judgment....I do not know what your response is.

We have got to get the case in a position so that she has adequate time to rule on

it."  (App. 1290)   Appellant's counsel agreed with these sentiments. *Id.*

Appellant then filed a "Reply to Defendants' Opposition to Plaintiff's Motion

for Leave to File Second Amended Complaint," which closed by saying "it would

be a just and efficient conservation of judicial resources for this Court to permit

Leave to file the Second Amended Complaint, since under the Defendant's theory,

if this Court were to not permit the Plaintiffs from arguing the matters in the

proposed Second Amended Complaint, the Plaintiffs would be entitled to seek

relief against the Defendants in a separate federal and/or state lawsuit at some later

date and time.  (App. 1292, 1295)  Among the attachments to this Reply, was a

Supplemental Affidavit of Charles J. Key, Jr., noting that in his expert opinion, that

if Mr. Levy's description of the incident of being "approached by Officer Ladd the

night before a civil proceeding which the City of New Carrollton was a

Defendant...if true, w[as] a deliberate attempt to intimidate and frighten Mr. Levy,

and, as a consequence, were not only not objectively reasonable and not consistent

---

[11] This date was discussed in the later conference call with Judge Connelly, and
was meant to relate the Judicial Conference's status dates and judges' preference
for having pending matters completed so that they are not on the six month report.
(App. 1778-1780)

with accepted standards of police practices, policies, and training, but constituted a

second degree assault against Mr. Levy." (App. 1343-1344)

A Response Memorandum was filed by Levy "In Opposition to Motion for

Summary Judgment on November 7, 2008. (App. 1363) Included as an

attachment was an Affidavit [p]ursuant to FRCP Rule 56 (e) and (f)...not[ing]

discovery has yet to be completed in this case. There are four (4) particular areas

of discovery that are still outstanding of the transcript for the recently completed

Deposition for Charlie's towing, the 30(b)(6) deposition of the City that had not

taken place yet, of telephone records of the City, and inquiries about recent news

reports including the <u>Washington Post</u> noting FBI and Maryland State Police

investigations of most of the Defendants in the case including "efforts by the

Defendants to alter documents, destroy documents, and obtain money and seized

vehicles from persons who encountered the City of New Carrollton Police

Department and which where a topic area in the redrafted 30(b)(6) deposition."

(App. 1379-1380)

A "Reply to Plaintiffs' Opposition to Motion for Summary Judgment" was

filed by Appellees on November 26, 2008. (App. 1713) On December 2, 2008,

correspondence was sent from Levy to Judge Connelly, noting that that an

Amended Deposition Notice was sent to Appellees, of a November 11, 2008 for

35

the 30(b)(6) deposition to take place, and that when Appellees requested a

Conference Call with Judge Connelly on November 20, 2011, after a few failed

attempts were made for the parties to speak on the subject of Appellee's concern,

that the Counsels spoke, and as a result of this conversation, the Court Reporter

was notified that the deposition would be postponed.  (App. 1726)

During the telephone conference, it was noted by Appellee's counsel that his

concern related to "narrowing the scope of the 30(b)(6) deposition."  (App. 1731)

Appellant's Counsel noted "I will just reiterate a little bit of what I said in my letter

of December 2nd.  Simply that, it was unexpected that I would have objections to

more than half of the areas in the 30(b)(6) and none of them were specific

objections and there was obviously some frustration on my part in the sense that no

warning was given beforehand....If I had received some sort of notice before that,

then perhaps I would have been able to prepare in those before we actually had

some sort of conference."  *Id.*  It is then noted by Mr. Wein that a "lot of my

designations are based on a case called *Wilson v. Lakner,* which is a [Judge

Messitte] case [at]... 228...F.R.D. 524 and it is a 2005 decision." (App. 1732)

The rest of the 53 page transcript concentrates on the differing viewpoints by

the parties as to the scope of the 30(b)(6)  deposition subject areas, and the

preparedness that should be done by designees. (App. 1729-1782)  Of particular

36

note by the Appellant, was his concern on the need to get a Designee explain many

of the Answers to Interrogatories given by New Carrollton, which Judge Connelly

held in abeyance at the time as to any ruling on the propriety of the subject area.

(App. 1744)

Later while the parties were going through with Judge Connelly on the

Appellee's objections on the 30(b)(6) deposition, Appellant's Counsel noted "I

expect some frustration in the sense that the day before the 30(b)(6) Mr. Karpinski

said he had an objection." (App. 1752) Judge Connelly replied, "I agree with that.

I can understand that. But, I am also frustrated because I need to get this case

moving. There are summary judgments that are—you responded but yet you have

an affidavit in it which you are permitted to do saying that I cannot really respond

to this because we have this outstanding discovery and I need to get this 30(b)(6)

deposition taken. It was supposed to have been taken a couple of weeks ago." *Id.*

> Mr. Wein: "I am happy to, again retry. I think though
> and try again with Mr. Karpinski one more time but I do
> think some of the conversation we have just had shows
> that there is a fundamental disagreement between me and
> Mr. Karpinski in terms of what is required by the
> corporate designee. I am not saying it is what is in Judge
> Messitte's opinion that whoever it is needs to go and
> actually not just show up on very small stuff, they need
> to actually do an investigation of what happened. They
> have to speak to the witnesses. They have to review the
> documents that go to the complaint to this case and they

37

> have to be able to go and bind the City of New Carrollton
> in terms of what happened...[b]ut, I don't want it to be a
> situation where I am showing up and the answer is, well
> frankly I don't know and half the reason they say I don't
> know is because I didn't investigate it."  (App. 1753)

Judge Connelly towards the end of the conference stated "I am still going to issue a ruling saying that certain of these are okay, others are not.  I will give you an opportunity to try to redraft.  I think you understand where I am coming from.  But I would like, however, to get this 30(b)(6) scheduled today because this needs to be done.  This case must go forward.

> Mr. Wein:  As I said, Your Honor, and I will just based
> this for the record, I am trying my best on this case.  That
> is all I will say, I mean, I am not working full time.  As
> long as I know ahead of schedule what needs to be done
> than I am happy and then I am able to do it.  I just need to
> stagger it... (App. 1776)

Further conversation then ensued on what significance, if any, was involved with March 31st date mentioned in a previous conference call, and Judge Connelly noted that "It does not mean that you have the matters ruled...In this case, there are circumstances that may mitigate against that simply because there have been significant discovery disputes and you have had health problems and obviously Mr. Karpinski was busy with the election in November."  (App. 1779)

38

An Order was subsequently issued by Judge Connelly, granting in part and denying in part Appellee's objections to Subject Area designated for the 30(b)(6) Deposition, and scheduling, as agreed to earlier in the Conference, the Deposition to take place on January 23, 2009.  (App. 14) On December 19, 2008, Levy provided 'Revised' Designation correspondence to the Court, most of which were objected to by the Appellees in correspondence dated December 29, 2008. (App. 1799)  Judge Connelly then on January 14, 2009, issued a Paperless Order granting in part and denying in part the Objections to subject areas designated for the 30(b)(6) deposition of the City of New Carrollton.  (App. 14)

The next filing with the Court was on February 2, 2009, where correspondence was sent from the Appellants, seeking reconsideration under Local Rule 105(10) on a specific determination of "Subject Topic Area 64,  which involves an FBI and Maryland State Police investigation of various officials of the City of New Carrollton, who are also for the most part Defendants in the case *sub judice."*  (App. 1801)  Furthermore, the correspondence indicated that "[t]he Deposition was not completed, primarily due to City Administrative Officer J. Michael Downes stating just prior to his questioning that he could no longer stay to participate, as he had to leave to go somewhere else.  The deposition was therefore continued, and it is anticipated that a date in mid-late February will shortly be

39

agreed upon by the parties of the Continuation..."  (App. 1804-1805)   Appellees

subsequently filed Correspondence with Judge Connelly on February 11, 2009,

concentrated on the "Subject Topic Area 64" and whether it was proper that Levy

was precluded from asking any and all questions that touched upon the publicized

investigations of various Defendants by the FBI and State Police.  (App. 1810-

1813) The description given by Appellees for why J. Michael Downes' testimony

was not taken at the schedule 30(b)(6) deposition of the City of New Carrollton

was as follows:

> "Finally, the City is compelled to note that Plaintiffs'
> explanation, included in the Motion for Reconsideration
> of why the 30(b)(6) deposition was not completed on
> January 23, 2009 is incomplete and self-serving.  Indeed,
> City Administrative Officer J. Michael Downes
> expressed his desire to leave at 4:45 rather than begin his
> portion of the deposition testimony at that late hour.  Mr.
> Downes had been waiting patiently in Mr. Wein's lobby
> for six hours and forty-five minutes at that point, while
> Mr. Wein deposed the other designees.  Earlier Mr. Wein
> had declined a reasonable request to relocate the
> depositions to the offices of the City of New Carrollton
> in order to permit the designees to attend to their duties
> throughout the day, when they were not required to be in
> the deposition.  The deposition began fourteen minutes
> late.  The actual deposition time was interrupted by Mr.
> Wein's request for a break during the deposition of the
> first deponent and Mr. Wein's request for a lunch break
> after finishing with the first deponent.  The remaining
> designees had already had lunch at that point.
> Defendants did not object to either request.  To place the
> onus on Mr. Downes for the need to continue the

30(b)(6) deposition is, at minimum, unfair." (App. 1814-1815)

Twelve days later, on February 23, 2009, further correspondence from the Appellees noted that there had been difficulties between the parties in scheduling the Continuation 30(b)(6) deposition of the City Administrator Downes. "It is [therefore] our belief that Mr. Wein has waived his clients' right to complete the deposition. We respectfully request the Court resolve this matter by ordering that the 30(b)(6) deposition is concluded." (App. 1817-1819) Two days later, correspondence from Levy Replying to the February 11, 2009 correspondence from the Appellees was provided on the Reconsideration Topic 64 discovery issue. (App.1842-1846) The next filing, however, was not by Judge Connelly. Instead, Judge Deborah Chasanow issued a Memorandum opinion on March 17, 2009, granting the large majority of the Appellee's Motion for Summary Judgment. (App. 15, 1847)

## MOTION FOR RECONSIDERATION AND FURTHER RULINGS BY THE TRIAL COURT

The Court's decision by Judge Chasanow held that "Plaintiffs' motion for leave to file second amended complaint will be denied, defendants' motion for summary judgment will be granted in part and denied in part, and defendants' motion to exclude Plaintiffs" experts will be granted." (App. 1847) The only Claim that survived Summary Judgment was on §1983, where Judge Chasanow stated that "[t]he law is clearly established that officers who issue moving or parking citations to vehicles and nothing more are not

41

permitted to then search those vehicles absent evidence of a crime or exigent circumstances.   The court is not able to find, nor have Defendants pointed to, any case where an officer was allowed to search such vehicles without triggering a Fourth Amendment violation.  On balance, Plaintiffs have raised a genuine issue of material fact as to whether Defendants Butler, Lyew, and Ladd unlawfully searched Plaintiffs' vehicles and in doing so, violated Plaintiff's Fourth Amendment rights."  (App. 1891)  Judge Chasanow also granted the Motion to Exclude Plaintiff's Expert, noting that "[t]he court's last approved deadline was February 15, 2008.  Plaintiffs, however, did not provide an expert report for Mr. Key until March 31, 2008, six weeks after the deadline."  (App. 1893)

Shortly after Judge Chasanow's rulings were received, two(2) rulings were received from paperless orders, noting that the #100 Motion for Reconsideration on the Topic 64 issue and #102 Correspondence regarding the 30(b)(6) deposition were now "Moot."  (App. 15)  Also on March 17, 2009, Appellant Levy filed Correspondence regarding both these issues that were just mooted by Judge Connelly, with seven exhibits, noting as part of a "postscript Note" that the Orders were just received and spoke with a Judge's Clerk (this was originally misidentified as Judge Chasanow's Clerk, but was corrected later as being Judge Connelly's Clerk (App. 2084)) on how a response was forthcoming, but that there was a substantive error on the transcript attachment that needed to be corrected first by the Court reporter before a filing could be done.  (App. 1900).  Additionally, it was stated by Levy that this ruling was done "with no previous

forewarning that these rulings were going to be issued.  This is despite the ongoing

discovery matter being litigated, Plaintiff's written intention to Supplement any Summary

Judgment Response, the Plaintiff's Affidavit on the outstanding discovery matters in the

original Summary Judgment Response, and Judge Connelly's acknowledgment during a

telephone conference on the Discovery affidavit being proper." *Id.*

 After permission was requested and granted for additional time for a

Reconsideration Motion to be filed, <u>Plaintiffs' Motion and Memorandum of Law in</u>

<u>Reconsideration to March 17, 2009 Decisions By Judges Chasanow and Connelly</u>  was

filed on April 8, 2009.  (App. 15, 16, 2084) As the main argument in favor of

Reconsideration, Levy noted:

> "Judge Chasanow had previously ordered that all *discovery
> and scheduling* matters were to be handled and adjudicated by
> Magistrate Judge William Connelly. Judge Connelly, had
> therefore been presiding regarding virtually every aspect of
> the case *sub judice* for greater than a year, without any
> previous notice, or timetable from this Court on
> supplementing the Opposition for Motion for Summary
> Judgment, which was originally filed when Plaintiff's
> Counsel was still unable to work with any predictability or
> regularity due to issues with his back and neck, with
> discovery still pending (as Judge Connelly found in *inter alia*
> requiring the City of New Carrollton to designate persons for
> attendance at a Rule 30(b)(6) deposition), and that
> unfortunately due to the Defendants leaving the Deposition
> without providing a critical witnesses' testimony at this
> deposition, is still definitely pending.   In other words, this
> Court's decision, respectfully was done in contradiction of
> previous scheduling rulings by this Court, and without an
> orderly timetable given for the Plaintiffs to provide any
> supplemental on the preliminary Opposition to the

43

Defendants' Motion for Reconsideration." [12]  (App. 2084-2085)

The Reconsideration motion itself included arguments against the merits of the Motion for Summary Judgment, Expert Witness Ruling, and Second Amended Complaint ruling.  (App. 2091-2095)  Seven Exhibits were also attached to the Motion.  (App. 2106-2159).  Appellees also filed an Opposition to Reconsideration, and apparently asserted that FRCP 59 (e) or FRCP 60(b) governed the matter.  (App. 2165)  On May 11, 2009, Levy filed a Reply to Opposition, noting *inter alia* in a Heading that "The Plaintiff's Motion for Reconsideration is Not Subject to Any Particular High Burden in Order to be Considered or Granted by this Court." (App. 2229)  Attached to this discussion was that a lower standard applied to interlocutory orders, and citing and attaching a copy of a District Court decision discussing this lower standard, along with a 4th Circuit decision being cited.  (App. 2229, 2706-2708)

On June 11, 2009, Judge Chasanow issued a Memorandum opinion, denying Reconsideration, noting that the "Standard of Review" governing her review was under FRCP 59(e), which allowed "three limited grounds for granting Reconsideration...: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence

---

[12] This Preliminary nature of the Opposition was specified clearly in the Opposition, in addition to and notwithstanding the Affidavit from the Plaintiff Mark Levy on the continuing discovery outstanding in responding to the Motion for Summary Judgment that goes towards the timeliness of any finalizing rulings on a Motion for Summary Judgment.

44

not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."
(App. 2722)

Judge Connelly shortly thereafter that same day, denied the Reconsideration as to the Discovery matters he was adjudicating, noting *inter alia,* that these rulings were as result of Judge Chasanow's ruling "dismissing all of Plaintiffs' claims except for the Section 1983 claim against Defendants Butler, Lyew, and Ladd." (App. 17) Judge Connelly, similar to Judge Chasanow stated that he was denying Reconsideration as "[t]here are three limited grounds for granting a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). Plaintiffs do not satisfy any of the three." (App. 18.

Eventually, a three day trial was held on just the §1983 Count against Defendants Officer Ladd, Lyew, and Butler on July 28, 29, and 30, 2010. As relevant to this Appeal, is that Levy "note[d] my objection to the exclusion of Joseph Key, who we wanted as an expert witness." (App. 2731) Eventually, a Defendants' verdict was received in the case. (App. 2779). A timely notice of Appeal was subsequently filed to this Court on August 27, 2010. (App. 2781)

## LEVY IV FILING (8:09-cv-02552-DKC)

As related to the earlier denial of the Motion for Leave to file Second Amended Complaint, was an additional suit that was later filed on September 29, 2009. The parties were Mark Levy as Plaintiff, and Officer David Ladd and the City as Defendants. (App. 2846) The suit was for violation of §1983, involved a confrontation, which Levy says

was initiated by Ladd, where *inter alia* after Ladd was served with Levy III case,

"Defendant Officer Ladd got into his unmarked car and pulled behind Plaintiff Mark B.

Levy, preventing his exit.  Defendant Officer Ladd then exited his vehicle, lifted his

jacket and brandished his firearm, so that Plaintiff Mark B. Levy could easily see his

weapon.  Plaintiff Mark B. Levy quickly walked away to avoid the situation and because

he was in fear for his own safety and well being."  (App. 2852)

     A Motion to Dismiss was then filed by the Appellees on the Complaint, *inter alia*,

arguing that "Plaintiff's claims are Barred by the Doctrine of *Res Judicata*.  (App. 2886)

An Opposition was then filed by Levy, noting that *res judicata* does not apply when the

Court never addressed the merits of Claim, when it denied the Motion for Leave to

Amend Complaint, and that an Expert Witness Report from Joseph Key, attached,

already substantiated that the incident described by Levy, constituted "unreasonable"

conduct by Officer Ladd, justifying §1983 relief. (App. 2907, 2927)   Eventually, the

District Court granted the Motion to Dismiss on "claim-splitting" *res judicata* grounds in

a decision issued August 11, 2010.  (App. 3031)  A timely Notice of Appeal to this Court

was subsequently filed on August 27, 2010.  (App. 3035)

# SUMMARY OF ARGUMENT

The Questions Presented concentrates on three (3) primary issues. The first overarching issue for the litigation, is on the Motion for Reconsideration on various matters concerning the dispositive Motion ruling that had been mostly granted by the Article III judge, various ongoing discovery matters that were perspicuously not adjudicated by the Magistrate judge due to the dispositive motion ruling, and the corresponding procedural errors, including the granting by the trial Court of the Motion in Limine on the Appellant's Expert Witness on police practices. The underlying litigation involves lengthy and complicated arguments, that resulted in an about 500 page Motion for Summary Judgment filed by the Appellees/Defendants. However, at the time of the filing, it was disputed whether the Motion for Summary Judgment was prematurely filed, as there were still ongoing discovery disputes that had not been adjudicated. These discovery disputes, as well as all scheduling matters, had been assigned to the Magistrate Judge William Connelly, for adjudication by Judge Deborah Chasanow. Eventually, it was determined that there would be time given for the completion of discovery, and therefore time to file a 'Supplemental' Opposition to Motion for Summary Judgment, after a Preliminary Opposition was earlier filed, with an affidavit noting pending Discovery matters.

47

These matters were still pending and being addressed (with the delay primarily due to significant disagreements over the scope of a 30(b)(6) deposition, and counsel recovering from a back injury and surgery); however, the Article III Judge suddenly granted partial Summary Judgment on all matters and defendants, except three police officers on the § 1983 Counts. A few hours after the trial judge's ruling, the Magistrate judge declared that the pending discovery and scheduling matters were now 'moot' due to the trial Judge's rulings. Therefore, no finalized discovery was permitted to done by the Appellant, particularly on the important remaining deponent of the City Administrator for the City of New Carrollton, as well as disputes over the 30(b)(6) deposition, that were never properly adjudicated by the Court.

Just as significantly, is that when the Appellants sought through a Motion for Reconsideration) to correct what appears to be a miscommunication between the trial and magistrate judges (in that there were still pending scheduling and discovery matters being adjudicated, and no opportunity to 'Supplement' the Opposition with even the completed discovery matters), the trial Court instead indicated that they **did not have discretion** to adjudicate the Motion for Reconsideration, since they contended that FRCP 59 governed the matter, even though it is the completely discretionary FRCP 54(b) that Appellant contends

48

governs interlocutory matters.   So what could have arguably been corrected through allowing consideration of the Supplemental materials, as well as a few months time in the hotly contested and extensively argued discovery on the already scheduled 30(b)(6) deposition that was not completed, may have reduced any reversible errors by the trial judges.  However, in failing to exercise discretion in permitting consideration of the Motion for Reconsideration, based on an erroneous determination that FRCP 59 governed instead of FRCP 54(b), as well as the merits of the Motion, and even assuming *arguendo* that  FRCP 59 governed, there still exists reversible error, as it was due to the Appellant's reasonable reliance **based on earlier Court orders** that a full and fair opportunity would be given for drafting a 'Supplemental' Opposition to Summary Judgment, after discovery had been completed.

At a time prior to the completion of discovery, the Appellant filed a Motion for Leave to Amend Complaint, after unsuccessfully requesting consent with the Appellee, involving a § 1983 Count against Appellee David Ladd and New Carrollton, when Officer Ladd is alleged, among other things, to have brandished his firearm against Appellant Mark Levy the night before a Court case between Levy and New Carrollton, at a local 7-11.

This act, which an expert witness found in a report, if true, to be objectively unreasonable for a police officer to undertake, took place after all the events in the pending Levy cases, and it is argued, independently justifies a civil cause of action. Nevertheless, as a matter of judicial economy, since the act involved the same parties, Appellant sought to include the matter as part of the existing Levy II and Levy III cases. However, when the Appellee objected on the basis of it potentially requiring additional discovery, and thereby affecting the Court's schedule, the Court eventually issued an Order denying the Motion for Leave to Amend Complaint. No adjudication was made of the merits of the Claims against Ladd and New Carrollton from the 7-11 incident, and it was specifically stated at the time in furtherance of the Motion for Leave, that one of the reasons that the Motion should be granted, was that otherwise Appellant would be entitled to file the case as a separate Complaint.

Subsequently, and prior to the three (3) year Statute of Limitations governing § 1983 Causes of Action, a Complaint was filed on the same matters. The Appellees this time sought to have the Case dismissed, primarily by claiming that the 'prior attempt' to have the case addressed through a Motion for Leave, should constitute a type of *res judicata* in the matter, even though there was no adjudication on the merits, and the actions against Levy this time took place at a

50

different and later time and place from all the other events that constituted Levy II and Levy III.  The trial Court eventually granted the Motion to Dismiss.

An additional argument for Review is presented based on the exclusion through a Motion in Limine, of the Appellant's Expert Witness on Police Practices, who provided an Expert Report substantiating many of the Counts as "objectively unreasonable" for a police officer to engage in.  There was discussion by the parties, which are noted in the Joint Status Reports, that the Expert Witness Joseph Key would be providing a 'Supplemental Report' after being able to view the deposition testimony of most of the Officers, without which a finalized report could not be done.  The Report went to many of the contended 'disputes of material fact' which the Appellant argued existed to deny Summary Judgment against the Appellees, as well as buttressed the claims of Appellant on § 1983 violations, which did end up going to trial.  As it is contended by Appellant that this exclusion was erroneous and/or an abuse of discretion, particularly as it was discussed in Joint Status Reports that there would be a Supplemental Report which directly contradicted the eventual finding granting Summary Judgment on many of the Counts discussed by the qualified Expert Witness, and to the extent there was any scheduling Order violation, it was inadvertent and with little to no prejudice shown to the Appellee, the trial Court erred.

51

# ARGUMENT

I.   **THE TRIAL COURT ERRED THROUGH: (1) ISSUING A RULING GRANTING MOST BUT NOT ALL OF THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WHEN PURSUANT TO A PREVIOUS COURT ORDER, THE MAGISTRATE JUDGE WAS STILL ADDRESSING DISCOVERY DISPUTES, A 30(b)(6) DEPOSITION HAD NOT BEEN COMPLETED ON THE NAMED DEFENDANT'S MAIN CORPORATE DESIGNEE, AND REASONABLE RELIANCE BY APPELLANT WAS THAT THERE WOULD BE TIME GIVEN TO FILE A SUPPLEMENTAL OPPOSITION TO SUMMARY JUDGMENT, (2) THAT THIS ERROR WAS EXACERBATED BY THE TRIAL COURTS' REFUSAL TO CONSIDER THE DRAFTED RECONSIDERATION TO INCLUDE ADDITIONAL CONTENDED DISPUTES OF MATERIAL FACT, THE MAGISTRATE JUDGE'S 'MOOTING' OF ALL PENDING DISCOVERY MATTERS DUE TO THE PREMATURE TRIAL JUDGE'S RULING, AND AFFIDAVIT OF PENDING DISCOVERY, AND (3) THE TRIAL COURT CLAIMING THAT THEY COULD NOT AND WOULD NOT CONSIDER ANY OF THESE MATTERS, BY RELYING UPON THE LIMITED EXCEPTIONS DELINEATED IN CASE LAW UNDER FRCP 59 AND NOT THE CORRECT AND APPLICABLE STANDARD OF CONSIDERATION AND REVIEW UNDER FRCP 54(B) THAT PERMITS JUDICIAL DISCRETION TO BE EXERCISED ON NON-FINAL JUDGMENTS.**

   **A. STANDARD OF REVIEW**

Although the Trial Court ruled upon, denied and 'mooted'[13] the Motion for

Reconsideration under the 'strict' standards applicable FRCP 59, this was

respectfully the wrong standard to apply, (*see infra*), as it was a partial grant of

summary judgment, and thereby interlocutory in nature and falling under FRCP

54(b), which has an abuse of discretion standard. However, as the 'factors' were

erroneously considered as being the appropriate standard by the trial Court (App.

---

[13] The decisions of Judge Connelly to find the pending Discovery matters in this
regard 'Moot' were considered by Judge Connelly to be derivative of Judge
Chasanow's rulings. *See* Paperless Orders by Judge Connelly denying Motion for
Reconsideration and Correspondence regarding 30(b)(6) "moot", issued shortly
after Judge Chasanow's Memorandum Order granting most of Appellees' Motion
for Summary Judgment; *see also* #121, Paperless Order Denying as Moot #68
Motion for Discovery Deficiencies Previously Ordered by the Court which was
held in abeyance by the Order of December 10, 2009 (#80) pending the taking of
the City of New Carrollton's 30(b)(6) Deposition. As outlined in Defendants'
Correspondence regarding the 30(b)(6) deposition (#102) the City of New
Carrollton produced four (4) designees. Plaintiffs' Counsel completed the
depositions of three of the four designees. The deposition of the fourth designee, J.
Michael Downes, was not completed on January 23, 2009. Efforts were made to
continue that deposition. Those efforts were unsuccessful. In light of Judge
Chasanow's ruling dismissing all of the Plaintiff's claims except for the Section
1983 claim against Defendants Butler, Lyew and Ladd, this motion is moot; #122,
Paperless Order Denying #114 Motion for Reconsideration of March 17, 2009
Rulings By Judge Connelly. The Court found as moot Defendants'
Correspondence regarding the 30(b)(6) deposition (#102) in light of Judge
Chasanow's ruling dismissing all of Plaintiff's claims except for the Section 1983
claim against Defendats Butler, Lyew and Ladd. See Documents #104-105.
Defendants' correspondence regarding the 30(b)(6) deposition concerning
unsuccessful efforts to complete the deposition of J. Michael Downes, City
Administrative Officer. The Court reaffirms this matter as moot; Judge Connelly
also confirmed that his denial was based upon applying the three limiting
exceptions for grant in FRCP 59(e), and not FRCP 54(b) (App. 15, 17, 18).

53

2722), it is contended by Appellant that the proper standard of review at the outset would be *de novo*. *See e.g. Rodriguez v. MEBA Pension Trust,* 956 F.2d 468 (4th Cir. 1992)[14] ("As this Court has previously held, however, "[o]ur review, therefore, while technically for 'abuse of discretion' only, may find 'abuse' (or more properly, an erroneous exercise of discretion) in failure, whether by mistake or unawareness, to observe the legal constraints which 'inform' the proper exercise of discretion in the matter. *See Cooter & Gell v. Hartmarz Corp.,* 496 U.S. 384[…] (1990)(legal errors affecting exercises of discretion may be treated as abuses of discretion by reviewing court); *United Food & Commercial Workers v. Marval Poultry,* 876 F.2d 346, 350-351 (4th Cir. 1989)(review of discretionary decision may include *de novo* review for legal error affecting exercise of discretion.")

Motions for Reconsideration of an interlocutory order are governed by Rule 54(b), which states "any order or other decision…may be revised at any time before the entry of judgment adjudicating all the claims and all the parties; rights and liabilities." Fed. R. Civ. P. 54(b). Although it is contended in this appeal that Judge Chasanow's error included applying the incorrect standard of review through

---

[14] The *Rodriguez* case cited, incorporated citations to Supreme Court and 4th Circuit precedent, though the published opinion may no longer be of precedential value due to a rehearing en banc being granted on the legal issue involving attorneys' fees in ERISA cases, which caused the panel's opinion to be vacated, followed by settlement which resulted in the entire appeal being dismissed as moot. 978 F.2d 1334 (4th Cir. 1992)

FRCP 59, instead of the applicable FRCP 54(b), in denying the Motion for

Reconsideration after the partial grant of Summary Judgment in this case, it is

noteworthy that Judge Chasanow as well as other District Court Judges have

previously stated that it is unknown in this Circuit what standard of review should

be applied to FRCP 54(b) motions.  *See Mateti v. Activus Fin., LLC*, 2009 U.S.

Dist. LEXIS 99869, 10-11 (D. Md. Oct. 27, 2009) ("In the Fourth Circuit, the

precise standard that should govern a motion for reconsideration of an

interlocutory order is unclear. *Fayetteville Investors v. Commercial* Builders, Inc.,

936 F.2d 1462, 1472 (4th Cir. 1991). In determining whether it should reconsider

an interlocutory order, a district court's consideration is not bound by the Rule

60(b) standard, though the court may at least reference parts of the Rule 60(b)

standard. *Id*. at 1470; *Am. Canoe Ass'n v. Murphy Farms, Inc.,* 326 F.3d 505, 514

(4th Cir. 2003) ("Motions for reconsideration of interlocutory orders are not

subject to the strict standards applicable to motions for reconsideration of a final

judgment."). Thus, the court's analysis is guided by Rule 60(b) but is not bound by

its strictures."); *see also Foreman v. Unnamed Officers of the FBI,* 2010 U.S. Dist.

LEXIS 121532 (D. Md. 2010)(J. Chasanow) (same, while noting that "[b]ecause

the court's prior decision did not adjudicate all of Plaintiff's claims, it falls under

the scope of Rule 54(b)");

As this Court noted in the primary case on the Standard of Review in *Am.*

*Canoe Ass'n v. Murphy Farms, Inc.,* 326 F.3d 505(4th Cir. 2003):

> "With the labeling issue [of the order being a 'grant of partial summary judgment'] resolved, the proper standard by which to assess the propriety of the district court's denial of reconsideration becomes clear.  True declaratory judgments, like other final orders, trigger heightened standards for reconsideration.  *See Fed. R. Civ. P.* 59; *id. 60(b)*  This is understandable as significant time and resources are often invested in arriving at a final judgment.  Unlike a true declaratory judgment, an order of partial summary judgment is interlocutory in nature. *See e.g.* 11 Moore's Federal practice §56.40[3] (Matthew Bender 3d Ed.)("A partial summary judgment order is interlocutory....") Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment.  *See* 12 Moore's Federal Practice § 60.23 (Rule 60(b) does not govern relief from interlocutory orders…") This is because a district court *retains the power to reconsider* and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment such is warranted. [Emphasis added]  *See Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1469 (4th Cir. 1991)("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment; *cf. Fed. R. Civ. P.* 54(b)(providing that interlocutory orders that resolve fewer than all claims are "subject to revision at any time before the entry of [final] judgment").   Said power is committed to the discretion of the district court, *see Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S 1, 12 […] (1983)(noting that "Every order short of a final decree is subject to reopening at the discretion of the district judge.")…)  *Id.* at 514-515.

56

Despite disagreement as exactly what standard is to be implemented, (*see infra,*) the description from *American Canoe* of the applicable standard to used in the Fourth Circuit, has been cited numerous times in District Court decisions.  *See Mayfield v. NASCAR,* 2010 U.S. Dist. LEXIS 136753 (D.W.N.C.)(Noting that despite erroneous request by Plaintiff's for relief under FRCP 59 and 60, "reliance on these rules is misplaced as they are not applicable to interlocutory decisions...[b]y their express terms, these only apply to a final judgment [and thus FRCP 54 governs];" *Seoul Broadcasting Sys. International Inc. v. Young Min Ro,* 2011 U.S. Dist. LEXIS 52016, *7 (D. E.D.Va., Dec. May 16, 2011)(J. Brinkema)("Pursuant to [FRCP] 54(b), a court may revisit its prior decisions and reconsider interlocutory orders such as non-dispositive orders on motions for summary judgment, for good cause and as the ends of justice may require."); *Aetna Casualty and Surety Co., v. The Wallace and Gale Co.,* 2002 WL 32122507 (D.Md.)(J. Messitte)("Since the Court made no express finding entering judgment in its June 4, 1997 Order vis-à-vis Liberty Mutual, the Court retains full authority to revise that Order at this time.  The Court may thus revisit that Order in its discretion.")  *Id.* at *1 (App. 2706);

**B. The Trial Court Erred through its Erroneous Application of the Limited Standard Applicable to Reconsideration Motions in FRCP 59, and Determining that it Did Not Have Discretion to Consider the Appellant's Motion on Reconsideration With Attached Exhibits (or were otherwise 'Mooted' by the Magistrate Judge)**

Judge Chasanow had previously ordered that all *discovery and scheduling* matters were to be handled and adjudicated by Magistrate Judge William Connelly. [Emphasis Added] (App. 293)  Judge Connelly, had therefore been presiding regarding virtually every aspect of the case *sub judice* for greater than a year, without any previous notice, or timetable from the District Court on supplementing the Opposition for Motion for Summary Judgment.  Discovery was still pending (as Judge Connelly found in *inter alia* requiring the City of New Carrollton to designate persons for attendance at a Rule 30(b)(6) deposition), and that unfortunately due to the Defendants leaving the Deposition without providing a critical witnesses' testimony at this deposition, was still definitely pending.

The District Court's decision was respectfully done in contradiction of previous scheduling rulings by this Court, and without an orderly timetable given for the Plaintiffs to provide any supplemental on the preliminary Opposition to the Defendants' Motion for Reconsideration..  It was therefore erroneous to issue the Ruling on the Summary Judgment, as at that time, both parties and Judge Connelly were immersed with adjudicating discovery disputes that were still pending, based on the FRCP 56 (f)

58

affidavit that was submitted, confirmed in the Statement of Facts, *supra,* that Judge Connelly was actively in the process of resolving. *See Phillips v. Phillips,* 91 F.2d 724 (4th Cir. 1990)(finding reversible error in ruling on summary judgment when there are pending discovery requests.)

This error was exacerbated when the Court then failed to exercise discretion under the proper standards applicable to the case, by using the strict burden of 59(e), as opposed to the less strict 54(b) that actually applied. (App. 2722) *See also Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.,* 197 F. Supp. 2d 298, 331-332 (D. Md. 2000) (J. Garbis)("The precise standard which should govern a motion for reconsideration of an interlocutory order is far less clear. In *Fayettville*, the Fourth Circuit declined to "thoroughly express [its] views on the interplay of Rules 60, 59 and 54." Id. at 1472. It is clear that a motion for reconsideration of a interlocutory order is not governed by the precise standard which applies to Rule 60(b) motions. *Id.* at 1470 (expressing vigorous disagreement "with the district court's adoption of a Rule 60(b) standard."). The Fourth Circuit has, however, suggested that at least parts of the Rule 60(b) standard may be referenced by a district court in determining whether it should reconsider an interlocutory order. Id. (*citing with approval Gridley v. Cleveland Pneumatic Co.,* 127 F.R.D. 102 (M.D. Pa. 1989)). Consistent with this statement, the Court will be guided by the general principles of Rules 59(e) and 60(b), but does not consider itself bound by those Rules'

59

strictures. n2 *See Shrewsbury v. Cyprus Kanawha Corp.,* 183 F.R.D. 492, 493

(S.D.W.Va. 1998)."); *Power Paragon, Inc. v. Precision Tech. USA, Inc.,* 2008 U.S.

Dist. LEXIS 109720 (E.D. Va. 2008) (J. Jackson) ("Although no precise standard

has been established when reviewing a motion under Rule 54(b), it is clear that a

motion for reconsideration of an interlocutory order is not governed by the

standard which applies to Rule 60(b) motions").


**II.    THE TRIAL COURT ERRED IN BOTH FAILING TO PERMIT
LEAVE TO AMEND THE COMPLAINT BASED UPON A
§1983 CLAIM AGAINST APPELLEES DAVID LADD AND
NEW CARROLLTON THAT INVOLVES SEPARATE
CONSTRUCTIONAL VIOLATIONS THAT TRANSPIRED
AND DISCOVERED AFTER THE FACTUAL ALLEGATIONS
UNDERLYING THE LEVY II AND III COMPLAINTS, OR
ALTERNATIVELY COMPLYING WITH THE APPLICABLE
STATUTE OF LIMITATIONS TO ALLOW THIS NEVER
ADJUDICATED CAUSE OF ACTION  TO BE TRIED
SEPARATELY IN THE LEVY IV COMPLAINT**

### A. STANDARD OF REVIEW

With respect to the contended error on the trial Court's decision to not grant

Leave to file Second Amended Complaint on the §1983 Cause of Action from an

incident in October 2006, Federal Rule of Civil Procedure 15(a)(2) provides that

"the court should freely give leave [to amend] when justice so requires."   Leave to

amend should be given absent "bad faith, undue prejudice to the moving party, or

the amendment would be futile." *United States v. Pittman,* 209 F.3d 314, 317 (4th Cir. 2000). *See also Mayfield v. NASCAR,* 2010 U.S. Dist. LEXIS 136973 (Dis. Ct. W. N.C., December 13, 2010). The denial of a motion to amend a pleading under Fed. R. Civ. P. 15(a) is for abuse of discretion. *Equal Rights Ctr. V. Niles Bolton Assoc.,* 602 F.3d 597, 602-603 (4th Cir. 2010).

With respect to the interrelated argued error of the dismissed Complaint in Levy IV, it has been held that "[w]e "review de novo the district court's determination that [Mr. Nasious's] claims are barred by the statute of limitations." *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1194 (10th Cir. 1998). It is contended that the trial Court doubly erred in failing to consider that the Statute of Limitations governed the disposition of motion, which for §1983 causes of actions, remains three (3) years. However, to the extent that the trial Court's analysis of *res judicata* applies, that standard is also *de novo. See Bates v. Twp. of Van Buren*, 459 F.3d 731, 734 (6th Cir. 2006).

## B. The Court Erred in not Exercising Discretion in Permitting Leave to Amend

Judge Chasanow granted the Defendants' Motion to Strike Second Amended Complaint. Though the District Court's decision notes August 14, 2008 as the date that the Plaintiff's Filed the Motion to Amend, the actual request for Consent

required under the Local Rules, was done by Plaintiff's Counsel's law clerk in

mid-July. ( This was around the same time that counsel had his back surgery,

based on a herniated disk, which was diagnosed in December 2007. Respectfully,

this health reason is a significant factor in Plaintiff's Counsel not filing the matter

earlier, since the deposition of the Plaintiff where the issue of Officer Ladd's

encounter with the Plaintiff was discussed was done sometime in mid-September

2007, and would likely not be available until November 2007.   Furthermore,

besides the already included copy of the deposition, showing that this matter was

already inquired upon by the Defendants, the District Court's citation of *Sandcrest*

*v. Cumberland Co. Hospital System,*  853 F.2d 1139 (4th Cir. 1988) is easily

distinguishable, since that case involved seeking an amendment that "does not

seek to add more particularized or newly discovered facts to the complaints or to

plead a different cause of action" instead of a different remedy that was the case in

*Sandcrest*. *Id.* at 1148-1149.  To deny the amendments sought by the Plaintiffs,

are also as noted in the Opposition, judicially inefficient as "the Plaintiffs would

be entitled to seek relief against the Defendants in a separate federal and/or state

lawsuit at some later date and time." (App. 1295)


**C. Alternatively, the Trial Court Erred in Dismissing the Entirety
of the "Levy IV" case, as the Separately filed Complaint was**

**Filed within the Applicable Three (3) Year Statute of Limitations, and did Not Constitute *Res Judicata***

Appellees argue that this case is akin to "claim-splitting" for *res judicata* purposes and therefore it is appropriate in the instant action to dismiss case against the Defendants at the outset of the case and prior to any discovery in Levy IV. *Sensormatic Security Corp. v. Sensormatic Electronics Corp.*, 329 F.Supp. 2d 574 (D.Md. 2004)(Judge Chasanow), cited in the Defendants' Reply, the District Court stated "[i]n a claimsplitting case, **as with the traditional res judicata analysis**, the second suit will be barred if the claim involves the same parties or their privies and **'arises o t o the sa e transa tion or series o transa tions'** as the first claim." [Emphasis added]. *Id.* at 579. Despite Appellee's assertions on the clarity of its application to the instant action, Appellees' argument ignores the fact that the § 1983 action filed in the instant Complaint does not arise out of the same transaction or series of transactions at issue in *Levy III* merely because that case is referenced in ¶ 4. Instead, the actions of October 1, 2006 by Officer David Ladd took place *after* the filing and service of the *Levy III* case on Officer Ladd. Further, these actions which warranted a §1983 suit were not discovered, ironically enough, until a seven (7) hour deposition done on September 5, 2007, of the

63

Plaintiff Mark Levy, by the Law Offices of Karpinski, Colaresi & Karp, in *Levy III.*

As noted in *Sensormatic,* the examination on claim-splitting is related to the doctrine of *res judicata*, citing extensively from the Second Circuit's decision in *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2nd Cir. 2000). *Sensormatic, supra*, at 579, ftnt. 6. *Curtis* is mostly on point to the facts in the instant case, as the Second Circuit examined the issue of whether claim-splitting occurred where one party was denied leave to file a second amended complaint on the grounds of untimeliness. *Curtis,* at 139-140. It was held that "denial of a motion to amend will not inevitably preclude subsequent litigation of those claims set out in a proposed new complaint" and that "[o]nly denial of leave to amend *on the merits* precludes subsequent litigation of the claims." [Emphasis Added] *Id.* at 139. Finally, the Second Circuit held that because "the denial of leave to file the second amended complaint was clearly not based on the merits, but rather on the procedural ground of untimeliness…. the rule against claimsplitting is not appropriate to bar this action." [15] *Id.*

---

[15] Plaintiff notes this is not the first time Defendants have made a similar, though ultimately unsuccessful argument that *res judicata* or collateral estoppel precludes a plaintiff from bringing a claim against Defendants, for retaliating actions, that constitute new causes of actions, which took place underlined following the filing of a lawsuit

Here, Levy sought to amend the complaint in *Levy III* through Plaintiff's

Leave to File Second Amended Complaint.  Additionally, as stated in Plaintiff's

Reply to Defendants' Opposition to Plaintiff's Motion for Leave to File Second

Amended Complaint, Plaintiff argued:

> "Further, it would be a just and efficient conservation of judicial resources for
> this Court to permit Leave to file the Second Amended Complaint, since under
> the Defendant's theory, if this Court were to not permit the Plaintiffs from
> arguing the matters in the proposed Second Amended Complaint, the Plaintiffs
> would be entitled to seek relief against the Defendants in a separate federal
> and/or state lawsuit at some later date and time." (App. 1295)

Appellees opposed this motion, citing in their subheadings for denial that

"Plaintiff's Motion is Untimely Under the Court's Scheduling Order," Defendants

Would be Prejudiced by Lack of Opportunity to Conduct Discovery," "Plaintiff's

Allegations Alter the Nature of the Claims," and "Plaintiff's Actions are a Bad

Faith Attempt to Delay."  This Court denied Plaintiff's Motion for Leave to File

Second Amended Complaint—just as the trial court in the *Curtis* case—on the

procedural ground of untimeliness as asserted by the Defendants.

Respectfully, the simple fact remains that the § 1983 claim in the instant

action arises out of an entirely different transaction or series of transactions than

did the claims of *Levy III*.  The trial for *Levy I* was scheduled for October 2, 2006.

---

against City of New Carrollton.  *See Levy II* Opinion in Court of Special Appeals
(Reversed and remanded) (Hollander J.), *supra.*

The only similarity between the facts of the instant action and in prior litigation is that the transactions from which the instant claim arose involved one of the same prior co-Defendants, David Ladd, while working for the same co-Defendant City of New Carrollton, threatening, harassing, and assaulting—*in an entirely new way, at a new location, and on a new date*—involving the same prior Plaintiff, *after* the facts giving rise to all previous actions had passed, and was serendipitously discovered through a deposition a year after the event, during the course of the *Levy III* case. That Levy essentially attempted to accomplish a 'consolidation' of the case *sub judice* by amending the *Levy III* case as opposed to filing a *Levy IV* case then, done purely as a convenience to this Court and the parties, *which the Appellees opposed on timeliness grounds and need for discovery,* does not respectfully permit Appellees to now claim that *Levy IV* should be dismissed, particularly as Appellees were apprised of this possibility, and should be estopped from their changing argument on this case.

**III.    THE TRIAL COURT ERRED IN EXCLUDING THE POLICE PRACTICE EXPERT WITNESS HIRED TO TESTIFY TO MATTERS DESCRIBED IN HIS REPORTS, EVEN THOUGH THERE WAS AN AGREEMENT TO SUPPLEMENT THE ORIGINAL REPORT IN THE RECORD AFTER ADDITIONAL DISCOVERY HAD TAKEN PLACE OF REVIEWING THE DEFENDANT OFFICER'S DEPOSITIONS(AND ANY ERRORS WERE INADVERTENT AND NON-PREJUDICIAL BETWEEN PARTIES), WHICH WAS DONE BY APPELLANT,**

66

**JUSTIFYING A REVERSAL ON A NUMBER OF SUMMARY JUDGMENT DETERMINATIONS THAT WERE UNSUSTAINABLE BASED ON THE EXPERTS REPORT, AS WELL AS THE EXCLUSION OF THE EXPERT WHO WOULD HAVE OPINED AT TRIAL ON APPELLEE'S UNREASONABLE ACTIONS BASED ON HIS EXPERIENCE ON POLICE PRACTICES, JUSTIFY A NEW TRIAL ON THE TRIAL ON THE §1983 ACTION WHICH TOOK PLACE**

## A.  STANDARD OF REVIEW

We review the district court's exclusion of plaintiff's expert witness for an abuse of discretion. *See Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003).

The language of Rule 37(c)(1) provides two exceptions to the general rule excluding evidence that a party seeks to offer but has failed to properly disclose: (1) when the failure to disclose is "substantially justified," and (2) when the nondisclosure is "harmless." Here, in concluding that Byrnes' undisclosed third opinion should be excluded, the district court applied the following five-factor test for determining whether nondisclosure of evidence is substantially justified or harmless: "'(1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.'" *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.,* 318 F.3d 592, 596

(4th Cir. S.C. 2003).[16]

**B. AS THERE WAS NO VIOLATION OF THE SCHEDULING ORDER, IN THAT THE PARTIES AGREED TO THE REPORT BEING FILED WHEN SUFFICIENT DISCOVERY HAD BEEN COMPLETED, PERMITTED EXPLICITLY BY FRCP 26, THE TRIAL COURT ERRED IN EXCLUDING THE PLAINTIFF'S EXPERT WITNESS, PARTICULARLY AS ANY ERROR WAS HARMLESS IN THE COURT'S ASSERTION THAT THE REPORT ITSELF WAS SIX (6) WEEKS LATE**

In accordance with this Court's Scheduling Order, Plaintiffs filed expert witness disclosures on March 5, 2007 for expert witness Joseph Key, an expert on Police Practice. This disclosure with attachments included the experience, CVs, expected testimony, and recent cases of both expert witnesses. (App. 892-926) This disclosure was prior to any depositions being done in the case. In order for a complete report to be accomplished by Plaintiffs' Experts, it would at a minimum be necessary for the experts to review documentary discovery sought and the depositional testimony of all the participants of the events that led to the Levy III case, including the four police officers who are Defendants in this case.[17]

---

[16] However, while the tests discussed above apply to regular expert witness discovery violations determined by the Court, it is additionally argued by Appellant that there was respectfully no discovery violation in this case, which itself constitutes an abuse of discretion.

[17] This would be somewhat different from a doctor as an expert witness in a medical malpractice case, who would in all likelihood be able to issue an expert

A few weeks after the Plaintiff's 26(a)(2)(b) disclosure, there were conversations and correspondence between counsels. This was at the approximate time that the Defendant's Rule 26 (a)(2)(b) disclosure would be due. The first correspondence, dated March 30, 2007, from Defense Counsel Kevin Karpinski, noted his concern about the Rule 26 (a)(2) disclosure, and "proposing that you agree to a forty-five (45) day extension from the date that I receive the reports to identify any rebuttal experts, if necessary. If you are unwilling to agree, I will have no choice but to move to strike your designation as deficient under the Federal Rules. I sincerely hope we can reach some sort of accord." (App. 936)

Two letters between counsel dated April 2, 2007, further detail the agreement between counsels, that "as we discussed, although you have identified expert witnesses, you have not provided any reports,[18] as required by the (FRCP). Rather than filing a motion with the Court, we agreed that I would have an extension of time until thirty (30) days after I have received reports from your experts to designate rebuttal witnesses." (App. 936-937) A brief follow up to this

witness report based on the existing medical reports already existing and secured in the case.

[18] Plaintiffs would not necessarily agree with this characterization that a 'report,' albeit an initial report, was not filed with the Defendants in the Designation. The parties instead agreed for the experts noted by the Plaintiffs to get sufficient discovery completed **first** in order so that the Plaintiffs' Experts would be able to complete a report, followed by Defendants' experts, Plaintiff's rebuttal experts, and depositions of said experts, should they be necessary.

correspondence is noted in a letter dated April 12, 2007, whereby Plaintiffs'

Counsel noted "following the agreement of our offices as noted in your April 2,

2007 correspondence, since the presently scheduled date for the Plaintiff to note

Rebuttal Expert Witnesses is Tuesday, April 17, 2007, and because it would be

difficult, nay impossible, for the Plaintiff to designate any potential Rebuttal

Expert Witnesses without knowing first the Defendants' Expert Witnesses to be

designated, I believe it was understood by our offices that the Plaintiff will have an

extension of time of fifteen (15) days to designate any Rebuttal Expert Witnesses

until a time after you have designated the Defendants' Expert Witnesses in this

case.  If my letter incorrectly summarizes in any fashion our agreement, please

contact my office at your earliest opportunity**.**   (App. 938)

The three (3) Joint Discovery Status Reports of 5/18/07, 9/14/07, and

2/15/08, further reflect agreement between counsels. (App. 939-951)  The initial

Joint Discovery Status Report notes under I(c), titled <u>Expert Witnesses,</u> that

"Expert witnesses have been designated by the Plaintiffs in this matter.  The

Plaintiffs have acceded to the Defendants request for additional time to designate

experts until further discovery has taken place." *Id.*  This same sentence is used in

the 9/14/07 <u>Joint Status Report.</u>  *Id.*  Plaintiff's Interrogatory Answers, similarly

noted that a report would be provided following further discovery, in response to

the question of the Defendants on expert witnesses.  ("*See* Plaintiff's Expert Witness Designation pursuant to Federal Rule of Civil Procedure 26(a)(2). Pursuant to Agreement of Counsel, further material(s) will be provided upon further discovery in the matter.") (App. 954)

For the 2/15/08 Joint Status Report, besides quoting verbatim the above line, noted under Expert Witnesses in I (a), that "*[c]ounsels have agreed to discuss in good faith to create a mutually agreeable schedule for the expert witnesses*."[19] [Emphasis Added]  This Status Report, also noted under I (b), that "[t]he parties cannot agree on whether the current Discovery Deadline should be extended." (App. 949) Further, under Section III, Pretrial Motions, it is noted that "Plaintiffs recommend a later date of June 20, 2008 to accommodate the need to resolve the *lingering discovery*, discovery disputes over non-production and the 30(b)(6) deposition of the City of New Carrollton, *expert witness reports*, and the pending court case of <u>Levy I</u> in the Court of Special Appeals of Maryland. [Emphasis Added] *Id.*   On March 31, 2008, Defendants were faxed and mailed a 16-page copy of a comprehensive Expert Witness report from Charles Joseph Key, a noted expert in police practices.

---

[19] Unfortunately, and despite the *estoppel* concerns involved, no such attempt or good faith notice filing was made by the Defendants to agree to a schedule on Expert Witnesses discussed in the <u>Joint Discovery Report</u>, only the Motion to Exclude these experts that was  the subject of the <u>Opposition</u> *sub judice.*

Although a comprehensive Report was given to the Defendants on or about March 31, 2008, and the Defendants were originally apprised that Mr. Key would be anticipated to be testifying on this subject, but needed further information from depositions in order to do a report, **and it was agreed between the parties earlier that this was acceptable without any disapproval by the Court,** this Court concluded that under Rule 37, that this report was 'belated' enough by six (6) weeks to not allow the Plaintiff's expert to testify, or for the Report with affidavit to not be considered for Summary Judgment purposes.

This fails to comply with the Advisory Committee on the 2003 Amendments of FRCP 26, which state "For convenience, this rule and revised Rule 30 continue to use the term "expert" to refer to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters. The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report. *By local rule, order, or written stipulation, the requirement of a written report may be waived* for particular experts or imposed upon additional persons who will provide opinions under Rule 702."  [Emphasis Added]

72

Furthermore, it does not appear, based on the conversations between Counsels before Judge Connelly, that there was any particular bad faith on this issue, and that any disagreement that apparently justified the Appellee's Motion to Strike, was based on a later disagreement over what was agreed up previously between Counsels, which itself based on this conversation, was  inadvertent and harmless to the orderly course of proceedings. (App. 802-803)  The Report and Opinion of the Police Expert's thorough examination of all of the Defendant Officer's depositions, respectfully, was highly critical in defeating Summary Judgment on a number of the Claims involved, as well as added credibility to explain to the jury, in the eventual trial on the §1983 Claim.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Appellants respectfully request that this Court:

1. Vacate and Reverse the trial Court's determinations on the Motion for Reconsideration and 'Mootness' (and the concomitant determinations earlier made on the Appellee's Motion for Summary Judgment, ongoing Discovery, and Scheduling Order), to permit Appellant to complete all discovery that had previously awaiting determination prior to these rulings as well as an opportunity to examine any appropriate Supplemental discovery that would be appropriate to have since the Motion for Summary Judgment was granted, and then sufficient time in

73

which to Supplement an Opposition to the Motion for Summary Judgment, and for any Supplement to be considered by the District Court; and

2. Reverse the trial Court's determination precluding Appellants from arguing the §1983 Claim either as part of the appeal of 06-2598 through the erroneous denial of the Motion for Leave to Amend Complaint, and/or to argue this claim in the separately filed case of 09-2252; and

3. Reverse the trial Court's determination to exclude consideration for Summary Judgment purposes and trial of the police practices' expert witness Joseph Key's testimony and Expert Witness Report with Affidavit; and

4. Vacate and Reverse the granting of Summary Judgment based on the erroneous exclusion of the Expert Witness Report with Affidavit of Joseph Key; and

5. Order a Retrial on the §1983 Claims against Appellees Ladd, Lyew, and Butler, based on the exclusion of the testimony of the police practices' expert witness Joseph Key; and

6. Alternatively, remand the case back to the District Court of Maryland and for such other relief that is justified and proper.

74

## STATEMENT IN SUPPORT OF REQUEST FOR ORAL ARGUMENTS

Appellants Mark and Stanley Levy respectfully request oral arguments before this Court.   This case involves a very complex and fact-intensive scenario as to the Questions Presented for Review.   The three (3) Questions Presented also have keen importance to this Court,  particularly with respect to the issues of; (1) the Reconsideration Motion, which does not presently have any case delineating the standards for appellate review as to FRCP 54(b) in this Circuit, (2) denial of *both* the Leave to Amend Complaint without any adjudication on the merits and a later and separately filed Complaint for Damages filed within the applicable Statute of Limitations, (a situation distinguishable from any previous decisions of this Court and thus questions of First Impression), and (3) the expert witness exclusion, which Appellant contends is appropriate to consider under FRCP 26(b)(2) as a stipulation between parties, particularly because it was considered and verified in Joint Status Reports and correspondence that there was agreement/stipulation permitting the parties to designate a police practice expert's completed report, following the depositions of the main witnesses in the case. Thus, oral arguments are justified so that counsel may personally answer and

75

explain any questions that the Court may have to help assist this Court in

determining whether to grant the relief requested.


RESPECTFULLY SUBMITTED ON JULY 5, 2011


_____/s/_____

Michael Wein, Esquire

*Law Offices of Michael Wein*
7829 Belle Point Drive
Greenbelt, MD 20770
(301) 441-1151
Fax-(301) 441-8877
weinlaw@hotmail.com

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1.  This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because this brief contains 18584 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii).[20]

2.  This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using the word processing system Microsoft Word in font size 14, type style Times.

_____/s/_____
Michael Wein
*Attorney for Appellants*

---

[20] On March 3, 2011, this Court approved of an additional word limit of up to 30,000 words.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 5st day of July, 2011, a copy of the foregoing <u>Appellant's Brief</u> was electronically filed and mailed first-class, postage prepaid to:


Kevin Karpinski, Esquire
Karpinski, Colaresi **&** Karp
120 E. Baltimore Street, Suite 1850
Baltimore, MD 21201

$\underline{\hspace{2cm}/s/\hspace{2cm}}$
Michael Wein, Esquire

# <u>PERTINENT PROVISIONS</u>

CURRENT THROUGH CHANGES RECEIVED NOVEMBER 8, 2010 \*\*\*

FEDERAL RULES OF CIVIL PROCEDURE
TITLE V. DISCLOSURES AND DISCOVERY

### USCS Fed Rules Civ Proc R 26

### Rule 26. Duty to Disclose; General Provisions Governing Discovery

(a) Required Disclosures.
(1) *Initial Disclosure.*
(A) In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
(ii) a copy--or a description by category and location--of all documents, electrically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
(iii) a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and
(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.
(B) Proceedings Exempt from Initial Disclosure. The following proceedings are exempt from initial disclosure:
(i) an action for review on an administrative record;
(ii) a forfeiture action in rem arising from a federal statute;
(iii) a petition for habeas corpus or any other proceeding to challenge a criminal

conviction or sentence;

(iv) an action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision;

(v) an action to enforce or quash an administrative summons or subpoena;

(vi) an action by the United States to recover benefit payments;

(vii) an action by the United States to collect on a student loan guaranteed by the United States;

(viii) a proceeding ancillary to a proceeding in another court; and

(ix) an action to enforce an arbitration award.

(C) Time for Initial Disclosures--In General. A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan. In ruling on the objection, the court must determine what disclosures, if any, are to be made and must set the time for disclosure.

(D) Time for Initial Disclosures--For Parties Served or Joined Later. A party that is first served or otherwise joined after the Rule 26(f) conference must make the initial disclosures within 30 days after being served or joined, unless a different time is set by stipulation or court order.

(E) Basis for Initial Disclosure; Unacceptable Excuses. A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

(2) *Disclosure of Expert Testimony.*

(A) In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report-- prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

80

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) Witnesses Who Do Not Provide a Written Report. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

(D) Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

(i) at least 90 days before the date set for trial or for the case to be ready for trial; or

(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

(E) Supplementing the Disclosure. The parties must supplement these disclosures when required under Rule 26(e).

(3) *Pretrial Disclosures.*

(A) In General. In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:

(i) the name and, if not previously provided, the address and telephone number of each witness--separately identifying those the party expects to present and those it may call if the need arises;

(ii) the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and

(iii) an identification of each document or other exhibit, including summaries of other evidence--separately identifying those items the party expects to offer and those it may offer if the need arises.

(B) Time for Pretrial Disclosures; Objections. Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and

promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii). An objection not so made--except for one under Federal Rule of Evidence 402 or 403--is waived unless excused by the court for good cause.

(4) *Form of Disclosures.* Unless the court orders otherwise, all disclosures under Rule 26(a) must be in writing, signed, and served.

(b) Discovery Scope and Limits.

(1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

(2) *Limitations on Frequency and Extent.*

(A) When Permitted. By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.

(B) Specific Limitations on Electronically Stored Information. A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(C) When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be

82

obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

(3) *Trial Preparation: Materials.*

(A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

(C) Previous Statement. Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

(i) a written statement that the person has signed or otherwise adopted or approved; or

(ii) a contemporaneous stenographic, mechanical, electrical, or other recording--or a transcription of it--that recites substantially verbatim the person's oral statement.

(4) *Trial Preparation: Experts.*

(A) Deposition of an Expert Who May Testify. A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

(B) Trial-Preparation Protection for Draft Reports or Disclosures. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

(C) Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

(i) relate to compensation for the expert's study or testimony;

(ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

(iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

(D) Expert Employed Only for Trial Preparation. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

(i) as provided in Rule 35(b); or

(ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

(E) Payment. Unless manifest injustice would result, the court must require that the party seeking discovery:

(i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and

(ii) for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

(5) *Claiming Privilege or Protecting Trial-Preparation Materials.*

(A) Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

(B) Information Produced. If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the

information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

(c) Protective Orders.

(1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

(2) *Ordering Discovery.* If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.

(3) *Awarding Expenses.* Rule 37(a)(5) applies to the award of expenses.

(d) Timing and Sequence of Discovery.

(1) *Timing.* A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

(2) *Sequence.* Unless, on motion, the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice:

(A) methods of discovery may be used in any sequence; and
(B) discovery by one party does not require any other party to delay its discovery.

(e) Supplementing Disclosures and Responses.
(1) *In General.* A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
(B) as ordered by the court.
(2) *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

(f) Conference of the Parties; Planning for Discovery.
(1) *Conference Timing.* Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must confer as soon as practicable--and in any event at least 21 days before a scheduling conference is held or a scheduling order is due under Rule 16(b).
(2) *Conference Content; Parties' Responsibilities.* In conferring, the parties must consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan. The attorneys of record and all unrepresented parties that have appeared in the case are jointly responsible for arranging the conference, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court within 14 days after the conference a written report outlining the plan. The court may order the parties or attorneys to attend the conference in person.
(3) *Discovery Plan.* A discovery plan must state the parties' views and proposals on:
(A) what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;

86

(B) the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;

(C) any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced;

(D) any issues about claims of privilege or of protection as trial-preparation materials, including--if the parties agree on a procedure to assert these claims after production--whether to ask the court to include their agreement in an order;

(E) what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and

(F) any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).

(4) *Expedited Schedule.* If necessary to comply with its expedited schedule for Rule 16(b) conferences, a court may by local rule:

(A) require the parties' conference to occur less than 21 days before the scheduling conference is held or a scheduling order is due under Rule 16(b); and

(B) require the written report outlining the discovery plan to be filed less than 14 days after the parties' conference, or excuse the parties from submitting a written report and permit them to report orally on their discovery plan at the Rule 16(b) conference.

(g) Signing Disclosures and Discovery Requests, Responses, and Objections.

(1) *Signature Required; Effect of Signature.* Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name--or by the party personally, if unrepresented--and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

(A) with respect to a disclosure, it is complete and correct as of the time it is made; and

(B) with respect to a discovery request, response, or objection, it is:

(i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the

87

importance of the issues at stake in the action.

(2) *Failure to Sign.* Other parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention.

(3) *Sanction for Improper Certification.* If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

## USCS Fed Rules Civ Proc R 30

### Rule 30. Depositions by Oral Examination

(a) When a Deposition May Be Taken.

(1) *Without Leave.* A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45.

(2) *With Leave.* A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(2):

(A) if the parties have not stipulated to the deposition and:

(i) the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants;

(ii) the deponent has already been deposed in the case; or

(iii) the party seeks to take the deposition before the time specified in Rule 26(d), unless the party certifies in the notice, with supporting facts, that the deponent is expected to leave the United States and be unavailable for examination in this country after that time; or

(B) if the deponent is confined in prison.

(b) Notice of the Deposition; Other Formal Requirements.

(1) *Notice in General.* A party who wants to depose a person by oral questions must give reasonable written notice to every other party. The notice must state the time and place of the deposition and, if known, the deponent's name and address. If the name is unknown, the notice must provide a general description sufficient to

identify the person or the particular class or group to which the person belongs.

(2) *Producing Documents.* If a subpoena duces tecum is to be served on the deponent, the materials designated for production, as set out in the subpoena, must be listed in the notice or in an attachment. The notice to a party deponent may be accompanied by a request complying with Rule 34 to produce documents and tangible things at the deposition.

(3) *Method of Recording.*

(A) Method Stated in the Notice. The party who notices the deposition must state in the notice the method for recording the testimony. Unless the court orders otherwise, testimony may be recorded by audio, audiovisual, or stenographic means. The noticing party bears the recording costs. Any party may arrange to transcribe a deposition.

(B) Additional Method. With prior notice to the deponent and other parties, any party may designate another method for recording the testimony in addition to that specified in the original notice. That party bears the expense of the additional record or transcript unless the court orders otherwise.

(4) *By Remote Means.* The parties may stipulate--or the court may on motion order--that a deposition be taken by telephone or other remote means. For the purpose of this rule and Rules 28(a), 37(a)(2), and 37(b)(1), the deposition takes place where the deponent answers the questions.

(5) *Officer's Duties.*

(A) Before the Deposition. Unless the parties stipulate otherwise, a deposition must be conducted before an officer appointed or designated under Rule 28. The officer must begin the deposition with an on-the-record statement that includes:

(i) the officer's name and business address;

(ii) the date, time, and place of the deposition;

(iii) the deponent's name;

(iv) the officer's administration of the oath or affirmation to the deponent; and

(v) the identity of all persons present.

(B) Conducting the Deposition; Avoiding Distortion. If the deposition is recorded nonstenographically, the officer must repeat the items in Rule 30(b)(5)(A)(i)-(iii) at the beginning of each unit of the recording medium. The deponent's and attorneys' appearance or demeanor must not be distorted through recording techniques.

(C) After the Deposition. At the end of a deposition, the officer must state on the record that the deposition is complete and must set out any stipulations made by the attorneys about custody of the transcript or recording and of the exhibits, or about any other pertinent matters.

(6) *Notice or Subpoena Directed to an Organization.* In its notice or subpoena, a

89

party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

(c) Examination and Cross-Examination; Record of the Examination; Objections; Written Questions.

(1) *Examination and Cross-Examination.* The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615. After putting the deponent under oath or affirmation, the officer must record the testimony by the method designated under Rule 30(b)(3)(A). The testimony must be recorded by the officer personally or by a person acting in the presence and under the direction of the officer.

(2) *Objections.* An objection at the time of the examination--whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition--must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

(3) *Participating Through Written Questions.* Instead of participating in the oral examination, a party may serve written questions in a sealed envelope on the party noticing the deposition, who must deliver them to the officer. The officer must ask the deponent those questions and record the answers verbatim.

(d) Duration; Sanction; Motion to Terminate or Limit.

(1) *Duration.* Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination.

(2) *Sanction.* The court may impose an appropriate sanction--including the

reasonable expenses and attorney's fees incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the deponent.

(3) *Motion to Terminate or Limit.*

(A) Grounds. At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

(B) Order. The court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c). If terminated, the deposition may be resumed only by order of the court where the action is pending.

(C) Award of Expenses. Rule 37(a)(5) applies to the award of expenses.

(e) Review by the Witness; Changes.

(1) *Review; Statement of Changes.* On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) *Changes Indicated in the Officer's Certificate.* The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

(f) Certification and Delivery; Exhibits; Copies of the Transcript or Recording; Filing.

(1) *Certification and Delivery.* The officer must certify in writing that the witness was duly sworn and that the deposition accurately records the witness's testimony. The certificate must accompany the record of the deposition. Unless the court orders otherwise, the officer must seal the deposition in an envelope or package bearing the title of the action and marked "Deposition of [witness's name]" and must promptly send it to the attorney who arranged for the transcript or recording. The attorney must store it under conditions that will protect it against loss, destruction, tampering, or deterioration.

(2) *Documents and Tangible Things.*

(A) Originals and Copies. Documents and tangible things produced for inspection during a deposition must, on a party's request, be marked for identification and

attached to the deposition. Any party may inspect and copy them. But if the person who produced them wants to keep the originals, the person may:

(i) offer copies to be marked, attached to the deposition, and then used as originals--after giving all parties a fair opportunity to verify the copies by comparing them with the originals; or

(ii) give all parties a fair opportunity to inspect and copy the originals after they are marked--in which event the originals may be used as if attached to the deposition.

(B) Order Regarding the Originals. Any party may move for an order that the originals be attached to the deposition pending final disposition of the case.

(3) *Copies of the Transcript or Recording.* Unless otherwise stipulated or ordered by the court, the officer must retain the stenographic notes of a deposition taken stenographically or a copy of the recording of a deposition taken by another method. When paid reasonable charges, the officer must furnish a copy of the transcript or recording to any party or the deponent.

(4) *Notice of Filing.* A party who files the deposition must promptly notify all other parties of the filing.

(g) Failure to Attend a Deposition or Serve a Subpoena; Expenses. A party who, expecting a deposition to be taken, attends in person or by an attorney may recover reasonable expenses for attending, including attorney's fees, if the noticing party failed to:

(1) attend and proceed with the deposition; or

(2) serve a subpoena on a nonparty deponent, who consequently did not attend.


## USCS Fed Rules Civ Proc R 37


**Rule 37. Failure to Make Disclosures or to Cooperate in Discovery; Sanctions**

(a) Motion for an Order Compelling Disclosure or Discovery.

(1) *In General.* On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

(2) *Appropriate Court.* A motion for an order to a party must be made in the court

where the action is pending. A motion for an order to a nonparty must be made in the court where the discovery is or will be taken.

(3) *Specific Motions.*

(A) To Compel Disclosure. If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions.

(B) To Compel a Discovery Response. A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:

(i) a deponent fails to answer a question asked under Rule 30 or 31;

(ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);

(iii) a party fails to answer an interrogatory submitted under Rule 33; or

(iv) a party fails to respond that inspection will be permitted--or fails to permit inspection--as requested under Rule 34.

(C) Related to a Deposition. When taking an oral deposition, the party asking a question may complete or adjourn the examination before moving for an order.

(4) *Evasive or Incomplete Disclosure, Answer, or Response.* For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.

(5) *Payment of Expenses; Protective Orders.*

(A) If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing). If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

(B) If the Motion Is Denied. If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this

93

payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

(C) If the Motion Is Granted in Part and Denied in Part. If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

(b) Failure to Comply with a Court Order.

(1) *Sanctions in the District Where the Deposition Is Taken.* If the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court.

(2) *Sanctions in the District Where the Action Is Pending.*

(A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

(B) For Not Producing a Person for Examination. If a party fails to comply with an order under Rule 35(a) requiring it to produce another person for examination, the court may issue any of the orders listed in Rule 37(b)(2)(A)(i)-(vi), unless the disobedient party shows that it cannot produce the other person.

(C) Payment of Expenses. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.

94

(1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

(2) *Failure to Admit.* If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:

(A) the request was held objectionable under Rule 36(a);

(B) the admission sought was of no substantial importance;

(C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or

(D) there was other good reason for the failure to admit.

(d) Party's Failure to Attend Its Own Deposition, Serve Answers to Interrogatories, or Respond to a Request for Inspection.

(1) *In General.*

(A) Motion; Grounds for Sanctions. The court where the action is pending may, on motion, order sanctions if:

(i) a party or a party's officer, director, or managing agent--or a person designated under Rule 30(b)(6) or 31(a)(4)--fails, after being served with proper notice, to appear for that person's deposition; or

(ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.

(B) Certification. A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action.

(2) *Unacceptable Excuse for Failing to Act.* A failure described in Rule

37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c).

(3) *Types of Sanctions.* Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

(e) Failure to Provide Electronically Stored Information. Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system.

(f) Failure to Participate in Framing a Discovery Plan. If a party or its attorney fails to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f), the court may, after giving an opportunity to be heard, require that party or attorney to pay to any other party the reasonable expenses, including attorney's fees, caused by the failure.

## USCS Fed Rules Civ Proc R 54

### Rule 54. Judgments; Costs

(a) Definition; Form. "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment must not include recitals of pleadings, a master's report, or a record of prior proceedings.

(b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not

end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

(c) Demand for Judgment; Relief to Be Granted. A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.

(d) Costs; Attorney's Fees.
(1) *Costs Other Than Attorney's Fees.* Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.
(2) *Attorney's Fees.*
(A) Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.
(B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:
(i) be filed no later than 14 days after the entry of judgment;
(ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
(iii) state the amount sought or provide a fair estimate of it; and
(iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.
(C) Proceedings. Subject to Rule 23(h), the court must, on a party's request, give an opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78. The court may decide issues of liability for fees before receiving submissions on the value of services. The court must find the facts and state its conclusions of law as provided in Rule 52(a).
(D) Special Procedures by Local Rule; Reference to a Master or a Magistrate Judge. By local rule, the court may establish special procedures to resolve fee-related issues without extensive evidentiary hearings. Also, the court may refer issues concerning the value of services to a special master under Rule 53 without regard to the limitations of Rule 53(a)(1), and may refer a motion for attorney's

fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter.

(E) Exceptions. Subparagraphs (A)-(D) do not apply to claims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. § 1927.

## USCS Fed Rules Civ Proc R 59

## Rule 59. New Trial; Altering or Amending a Judgment

(a) In General.

(1) *Grounds for New Trial.* The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:

(A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or

(B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

(2) *Further Action After a Nonjury Trial.* After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

(b) Time to File a Motion for a New Trial. A motion for a new trial must be filed no later than 28 days after the entry of judgment.

(c) Time to Serve Affidavits. When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 14 days after being served to file opposing affidavits. The court may permit reply affidavits.

(d) New Trial on the Court's Initiative or for Reasons Not in the Motion. No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

(e) Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

## USCS Fed Rules Civ Proc R 60

## Rule 60. Relief from a Judgment or Order

(a) Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

(c) Timing and Effect of the Motion.
(1) *Timing.* A motion under Rule 60(b) must be made within a reasonable time-- and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.
(2) *Effect on Finality.* The motion does not affect the judgment's finality or suspend its operation.

99

(d) Other Powers to Grant Relief. This rule does not limit a court's power to:

(1) entertain an independent action to relieve a party from a judgment, order, or proceeding;

(2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or

(3) set aside a judgment for fraud on the court.

(e) Bills and Writs Abolished. The following are abolished: bills of review, bills in the nature of bills of review, and writs of coram nobis, coram vobis, and audita querela.

**Local Rule (105)(10) (District Court of Maryland)**

**Motions to Reconsider**

Except as otherwise provided in Fed. R. Civ. P. 50, 52, 59, or 60, any motion to reconsider any order issued by the Court shall be filed with the Clerk not later than fourteen (14) days after entry of the order.