IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

CASE NO.  10-2009 (L)
Consolidated w/ No. 10-2011
_____

MARK B. LEVY;
STANLEY S. LEVY,

Plaintiffs/Appellants,

V.

CITY OF NEW CARROLLTON, *et al.,*

Defendants/Appellees
_____

On Appeal from the United States District Court
For the District of Maryland/At Greenbelt
(The Honorable Deborah K. Chasanow, Judge)
_____

REPLY BRIEF OF APPELLANTS
_____

Michael Wein, Esquire
Belle Point Office Park
7829 Belle Point Drive
Greenbelt, MD 20770
(301) 441-1151
weinlaw@hotmail.com

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

ARGUMENT ...................................................................... 3

I.    AS THE RECENT CASE BY THIS COURT OF *SAINT ANNES* CONFIRMS, THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT EXERCISING DISCRETION ON WHETHER TO GRANT THE MOTION FOR RECONSIDERATION UNDER THE APPLICABLE FRCP 54, INSTEAD OF THE MUCH HIGHER FRCP 59 STANDARD AND REQUIREMENTS; IRRESPECTIVE OF THIS CLEAR ERROR, THIS COURT SHOULD EXPLICATE THE PROPER STANDARD OF REVIEW FOR FRCP 54 ON REMAND, GIVEN THE IMPORTANT ROLE THAT THIS WOULD PLAY IN ADJUDICATING THE CLAIMED ERRORS INTER ALIA OF THE APPELLANTS BEING PENALIZED FOR FOLLOWING THE TRIAL COURT'S EARLIER ORDER FOR JUDGE CONNELLY TO MAKE RULINGS ON SCHEDULING AND DISCOVERY MATTERS, WHEN DISCOVERY HAD NOT BEEN COMPLETED IN THE CASE ...... 3

A.  This Court's Existing Precedent, Including the Recent Case of *Saint Anne's Dev. Co. v. Trabich*, Requires at a Minimum For a Reversal and Remand for the Trial Court to Consider the Motion for Reconsideration on the Applicable Standard of Review .............................................................. 3

B.  This Court Should Schedule Oral Arguments to Resolve What Standard is Applicable for FRCP 54(b) Motions for Reconsideration in General and on Remand ........................ 6

i

C. Though Likely Unnecessary to Argue in the Posture of this Case, if Arguendo, the Appellant had to Argue the Standards under FRCP 59 , the Facts of this Case Satisfy this Standard .......................................................................................... 12

II.    EVEN ASSUMING ARGUENDO, THAT THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE SECOND MOTION FOR LEAVE TO AMEND COMPLAINT, DONE WITHOUT ANY ADJUDICATION WHATSOEVER OF THE MERITS, THERE WAS NO LEGAL BASIS UNDER A RES JUDICATA 'CLAIM-SPLITTING' THEORY, TO LATER PRECLUDE THE LEVY IV CASE THAT WAS FILED WITHIN THE STATUTE OF LIMITATIONS FOR §1983 CAUSES OF ACTION, ON THE SEPARATE ALLEGATIONS THAT OFFICER LADD BRANDISHED A FIREARM AND ACCORDING TO THE EXPERT WITNESS REPORT, SEPARATELY ASSAULTED APPELLANT MARK LEVY, MONTHS AFTER ANY "COMMON NUCLEUS OF OPERATIVE FACTS" TO BE ADJUDICATED IN LEVY II AND LEVY III.................................................................... 20

III.    THE TRIAL COURT ERRED, IN VIOLATION OF FRCP 26(B)(2), THAT PERMITS STIPULATIONS BETWEEN PARTIES, AND AS AN ABUSE OF DISCRETION, IN NOT CONSIDERING THE NOTED POLICE PRACTICES EXPERT'S REPORT FROM BEING CONSIDERED ON SUMMARY JUDGMENT, AND IN NOT TESTIFYING AT TRIAL, DESPITE REPEATED AGREEMENTS IN JOINT STATUS REPORTS THAT A SUPPLEMENTAL REPORT WOULD BE PROVIDED BY THE EXPERT AFTER SUFFICIENT DISCOVERY HAD BEEN ADDUCED, AND LACK OF ANY PREJUDICE INVOLVED IN THE PURPORTED 'SIX WEEKS' LATE SUPPLEMENTAL REPORT ................................. 30

CONCLUSION ................................................... 35

CERTIFICATE OF COMPLIANCE WITH RULE 32 (a)..................................... 36

ii

CERTIFICATE OF SERVICE ................................................................ 37

PERTINENT PROVISIONS.................................................................... 38

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Aetna Casualty & Surety Co. v. Wallace & Gale Co. (In re Wallace & Gale Co.)*, 284 B.R. 557 (D. Md. 2002) ................................................................. 10

*Aikens v. Ingram*, 2011 U.S. App. LEXIS 14298 (Dec. July 13, 2011) .................. 8

*American Canoe Associate v. Murphy Farms, Inc.*, 326 F.3d 505 (4th Cir. 2003) ....................................................................................................... 4, 5

*Capitol Justice, LLC v. Wachovia Corp.*, 605 F. Supp. 2d 187 (D.D.C. 2009)...... 12

*Celotex Corp v. Catrett,* 477 U.S. 317 (1986)..........................................................14

*Childers v. Slater*, 197 F.R.D. 185 (D.D.C. 2000).................................................. 12

*Cobell v. Norton*, 224 F.R.D. 266 (D.D.C. 2004) .................................................. 12

*Cobell v. Norton*, 355 F. Supp. 2d 531 (D.D.C. 2005) .................................... 11, 12

*Curtis v. Citibank N.A.*, 226 F.3d 133 (2nd Cir. 2000)................................... *passim*

*DL v. District of Columbia*, 274 F.R.D. 320 (Dec. May 09, 2011) ................. 11, 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)................... 31

*Dellums v. Powell*, 566 F.2d 231, 184 U.S. App. D.C. 339 (D.C. Cir. 1977) ........ 11

*Easley v. Kirmsee*, 382 F.3d 693 (7th Cir. 2004).................................................... 17

*Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350 (5th Cir. 1993) ....... 18

*Evan v. Eaton Corp.,* 514 F.3d 315, 320-21) (4th Cir. 2008) .................................. 8

*Fayetteville Investors v. Commercial Builders*, 936 F.2d 1462 (4th Cir. 1991).... 4, 5

*Ficken v. Golden*, 696 F. Supp. 2d 21 (D.D.C. 2010)............................................. 12

*Foreman v. Unnamed Offices of the Federal Bureau of Prisons*, 2010 U.S. Dist. LEXIS 121532 (D. Md. 2010) ................................................ 9

*Gibson-Michaels v. Bair*, 255 F.R.D. 306 (D.C. Cir. 2009)..................................17

*Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007) ..................................... 25

*Hardin v. Hayes,* 52 F.3d 934 (11th Cir. 1995).........................................................11

*High Country Arts & Craft Guild v. Hartford Fire Insurance Co.*, 126 F.3d 629 (4th Cir. 1997). ....................................................................... 10

*Hoffman v. District of Columbia*, 681 F. Supp. 2d 86 (D.D.C. 2010) .................... 12

*Johnson v. Mayor of Balt. City*, 2011 U.S. Dist. LEXIS 104919 (D. Md. Sept. 15, 2011) ............................................................................................ 21

*Kopf v. Skyrm*, 993 F.2d 374 (4th Cir. 1993) ........................................................ 31

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999) ................................................................................. 31

*Laber v. Harvey,* 438 F.3d 404 (4th Cir. 2006) (*en banc*).....................................21

*Lewis v. Clark*, 534 F. Supp. 714 (D. Md. 1982)................................................... 22

*Lyons P'ship, L.P. v. Morris Costumes, Inc.,* 243 F.3d 789 (4th Cir. 2001)..........24

*Metiti v. Activus Finance LLC*, 2009 U.S. Dist. LEXIS 99869 (D. Md. 2009)........ 9

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1 (1983).....11

*Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 148 F.3d 396 (4th Cir. 1998).................4

v

*Phillips v. General Motors Corp.,* 911 F.2d 724 (4th Cir. 1990)...........................14

*RZS Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350 (4th Cir. 2007) ........... 5

*Rice v. Rivera*, 617 F.3d 802 (4th Cir. 2010) ............................................................ 5

*Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403 (4th Cir. 2010) ....... 17, 18, 19

*RZS Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350 (4th Cir. 2007) ........... 5

*Saint Annes Development Co. v. Trabich*, 2011 U.S. App. LEXIS 17257 (4th
     Cir., Dec. Aug. 17, 2011) ........................................................................ *passim*

*Sciolino v. City of Newport News,* 480 F.3d 642 (4th Cir. 2007).........................21

*SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450 (2nd Cir. 1996)............................27

*Sensormatic Security Corp., v. Sensormatic Electronics Corp.*, 329 F. Supp. 2d 574
     (D. Md. 2004).........................................................................................22, 23

*Sinclair v. Mobile 360,* 417 Fed. Appx. 235, (4th Cir. Dec. March 3,
     2011)(unpublished) ...................................................................................... 8

*Snook v. Trust Co. of Ga. Bank of Savannah,* 859 F.2d 865 (11th Cir. 1988).........14

*Soliman v. Johanns*, 412 F.3d 920 (8th Cir. 2005) .................................................. 17

*State v. Pagotto*, 361 Md. 528 (Md. 2000) .............................................................. 30

*United States v. Barnette*, 211 F.3d 803 (4th Cir. 2000) ........................................ 31

*United States v. Delfino*, 510 F.3d 468 (4th Cir. 2007) ............................................ 5

*United States v. Hedgepeth,* 418 F.3d 441 (4th Cir. 2005)........................................5

*United States v. Mohr*, 318 F.3d 613 (4th Cir. 2003) ............................................. 31

*United States v. Prince-Oyibo,* 320 F.3d 494 (4th Cir. 2003)...................................5

vi

*United States v. Second Chance Body Armor, Inc.*, 709 F. Supp. 2d 52 (D.D.C. 2006) ........................................................................................ 12

*United States v. Williams,* 461 F.3d 441 (4th Cir. 2006) ........................................... 5

*Visa Int'l Serv. Ass'n v. Bankcard Holders,* 784 F.2d 1472(9th Cir. 1986) .......... 14

*Waterman v. Batton*, 294 F. Supp. 2d 709 (D. Md. 2003) ................................ 31, 32

*Wagoner v. Wagoner*, 938 F.2d 1120 (10th Cir. 1991) ........................................... 11

*Zimmer St. Louis, Inc. v. Zimmer Co.*, 32 F.3d 357 (8th Cir. 1994) ...................... 18

## STATUTES

42 U.S.C § 1983 ............................................................................................... *passim*

Local Rule 28 (f) (4th Cir.) .................................................................................... 1

FRCP 12      ........................................................................................... 21, 25

FRCP 15      ....................................................................................... 21, 24, 25

FRCP 26      ...................................................................................................... 29

FRCP 54      .............................................................................................. *passim*

FRCP 56      ........................................................................................................ 8

FRCP 59      .............................................................................................. *passim*

FRCP 60      .............................................................................................. 10, 19

Md. Cts. & Jud. Proc. § 5-101 ............................................................................... 22

## MISCELLANEOUS

3 James Wm. Moore, et al., *Moore's Federal Practice* § 15.19[3][a] (3d ed. 1997) ............................................................................................................... 24

# <u>INTRODUCTION</u>

It should be noted at the outset, that the Appellees make various contentions in their Brief that respectfully are not properly sourced to this Court.  Although the <u>Appellant's Brief</u> included 46 pages of comprehensive citations to matters in the Joint Appendix, in the <u>Statement of the Case and Facts</u>, directed towards the procedural and factual record of the  consolidated appeals in this case, the Appellees' devote 25 pages towards the <u>Statement of the Case</u>, with a single paragraph devoted to the Appellee's <u>Statement of Facts</u>.  *See* <u>Appellee's Brief</u>, page 25-26.   This Court's Local Rule 28 (f) ostensibly requires only that Statement of Facts in the Appellees Brief "shall also [be] so prepared [and]....["will include exhibit record, transcript, or appendix references showing the source of the facts stated]." However, as much of the Appellees' <u>Statement of the Case</u> involves unsourced statements that are both 'procedural ' and 'testimonial'  disputed 'facts' such that they should have been either included as part of the Statement of Facts, or otherwise cited to by the Appellee more than an average of one citation every two pages, (as opposed to virtually every sentence and paragraph in the Appellant's <u>Statement of the Case and Facts </u> citing to the Joint Appendix), it is somewhat

1

difficult to fully respond to these unsourced citations on the Appellee's recitation of procedural facts involved with this case.[1]

Nevertheless, because the arguments presented by Appellant, are misconstrued by the Appellees, this Court should not have to devote an overly great amount of time examining any potential disputes by the parties on the procedural and testimonial facts adduced during the case. This is because, as also noted *infra,* the primary error that arises between the parties on Question Presented #1, on the Motion for Reconsideration not being properly considered by Chief Judge Chasanow and Judge Connelly, involves a rather straightforward examination of reversible error by this Court, identical and indistinguishable from a recent reversal by this Court by Chief Judge Traxler, Judge Wilkinson, and Judge Davis in *Saint*

---

[1] These citations to the Joint Appendix also appear to be overwhelmingly found on matters that are of marginal relevance to the actual legal questions presented involved with this case, but are intended to give a different impression than the one expressed through Judge Hollander's appellate decision in the Court of Special Appeals, which noted the very different viewpoint presented on the primary instigator of the various incarnations of litigation for years to be the City of New Carrollton, and various employees and officials of the City.  (App. 90-146) Nevertheless, one example of a non-credible citation can be found at the outset of the Appellee's Brief, which is the Appellee's claim that "the Levys kept thirteen (13) vehicles parked on the street around [their house]." Appellee's Brief , page 4.  The actual *full* deposition portion of Mr. Levy's testimony in the record of this case, (and not the excerpt used by the Appellee) noted on the next page that Mr. Levy was referring to 12 "owned" vehicles by the Levys and "[t]hey're routinely moved to other properties that we [the Levys] have [including Ocean City and Laurel, Maryland]." (App. 1494)

*Annes Dev. Co. v. Trabich*, 2011 U.S. App. LEXIS 17257 (4th Cir., Dec.  Aug. 17, 2011)(unpublished), of the denial on Reconsideration by Judge William Quarles, also of the District Court of Maryland.

## ARGUMENT ONE

**I. AS THE RECENT CASE BY THIS COURT OF *SAINT ANNES* CONFIRMS, THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT EXERCISING DISCRETION ON WHETHER TO GRANT THE MOTION FOR RECONSIDERATION UNDER THE APPLICABLE FRCP 54, INSTEAD OF THE MUCH HIGHER FRCP 59 STANDARD AND REQUIREMENTS; IRRESPECTIVE OF THIS CLEAR ERROR, THIS COURT SHOULD EXPLICATE THE PROPER STANDARD OF REVIEW FOR FRCP 54 ON REMAND, GIVEN THE IMPORTANT ROLE THAT THIS WOULD PLAY IN ADJUDICATING THE CLAIMED ERRORS *INTER ALIA* OF THE APPELLANTS BEING PENALIZED FOR FOLLOWING THE TRIAL COURT'S EARLIER ORDER FOR JUDGE CONNELLY TO MAKE RULINGS ON SCHEDULING AND DISCOVERY MATTERS, WHEN DISCOVERY HAD NOT BEEN COMPLETED IN THE CASE**

> **A. This Court's Existing Precedent, Including the Recent Case of *Saint Anne's Dev. Co. v. Trabich,* Requires at a Minimum For a Reversal and Remand for the Trial Court to Consider the Motion for Reconsideration on the Applicable Standard of Review**

"[Appellants] argue that the summary judgment order was an interlocutory order subject to revision at any time, and that the district court erred by considering their motion for reconsideration under the standard governing motions filed under Rule 59(e) of the Federal Rules of Civil Procedure We agree.

3

Motions to alter or amend under Rule 59(e) may be granted if necessary "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co*., 148 F.3d 396, 403 (4th Cir. 1998). Rule 59(e), however, applies only to final judgments. *See Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1469 (4th Cir. 1991). As the Trabiches contend, the district court's summary judgment order, which did not resolve all claims against all parties, was interlocutory and thus subject to revision at any time.   *See* Fed. R. Civ. P. 54(b) (Unless certified as final, "any order or other decision, *however designated*, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and *may be revised at any time* before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.")[Emphasis Added]; *American Canoe Assoc. v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003) ("[A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted.").

The power to reconsider or modify interlocutory rulings "is committed to the discretion of the district court," and that discretion is not cabined by the "heightened standards for reconsideration" governing final orders. *American Canoe*, 326 F.3d at 514-15; *see also Fayetteville Investors,* 936 F.2d at 1473 (interlocutory orders "are left within the plenary power of the Court that rendered them to afford such relief from them as justice requires" (quoting 7 Moore's Federal Practice ¶ 60.20)). Because the district court applied the wrong legal standard to the Trabiches' motion for reconsideration, we vacate that portion of the partial summary judgment

4

order finding the Trabiches liable on the consulting-fees claims, and we remand for reconsideration of the motion under the proper legal standard. *See RZS Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350, 356 (4th Cir. 2007) ("*By definition, a district court abuses its discretion when it makes an error of law.*")[Emphasis Added];[2] *Fayetteville Investors,* 936 F.2d at 1473-74 (reversing and remanding because district court applied wrong legal standard to motion seeking reconsideration of interlocutory order). Nothing in this opinion, however, should be understood as expressing a view as to whether, upon application of the correct standard, the Trabiches' motion to reconsider should be granted.

*Saint Annes Dev. Co. v. Trabich*, 2011 U.S. App. LEXIS 17257, 6-8 (4th Cir. Aug. 17, 2011)

Though citing well established and similarly on point precedents of this Court, (particularly the *Fayetteville Investors* and *American Canoe* decisions), this Court's decision in *Saint Annes* would not arguably allow an automatic reversal for the Appellants, only because it is not published and therefore is not entitled to full

---

[2] At least three(3) other cases noting this standard, were included with the Appellant's Brief. *See* <u>Appellant's Brief,</u> page 54. *See also Rice v. Rivera,* 617 F.3d 802, 811 (4th Cir. 2010) ("Of course, 'a district court by definition abuses its discretion when it makes an error of law.' *United States v. Prince-Oyibo,* 320 F.3d 494, 497 (4th Cir. 2003)"); *United States v. Delfino,* 510 F.3d 468, 470 (4th Cir. Va. 2007)("A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law. [*United States v. Hedgepeth,* 418 F.3d 411, 419 (4th Cir. 2005)]; *United States v. Williams*, 461 F.3d 441, 445 (4th Cir. 2006).")

5

'precedential' value.  Appellants contend, however, that the reason for the lack of publication or even the need for oral arguments in *Saint Annes* was primarily due to the clear existing precedents of this Court.

However, the Appellees' failure to directly discuss the straightforward error of the *wrong standard of review* being used by the trial Court[3] (and particularly that this wrong standard of review of a significantly circumscribed limitation below full discretion, in contradiction to FRCP 54(b), was requested by the Appellees (App. 2164-2165)) and should be the preliminary issue to be examined and addressed by this Court.   For all the Appellants knew, the Appellees would fully concede the error in this Court.  Rather, while inferring that there may be potential reversal involved (though this is never directly stated), the Appellee's Brief notes that "[t]he Levys' focus on the standard of review identified in the Order denying the Motion for Reconsideration simply does not warrant reversal and remand *under these circumstances*" and then transitions to arguing again in favor of their error they

---

[3] Both Chief Judge Deborah Chasanow and Judge William Connelly, expressly stated that they were relying upon FRCP 59, and the three very limiting bases for reconsideration cited thereto, as the basis of their Rulings.  (App. 2722, 18)  This was clearly not a 'scrivener's error' by the trial court, which the Appellants' contend would be the only conceivable basis upon which this Court should not reverse for the trial court to consider and apply the correct standard of review.  These actions and citations were noted in the Appellants' Brief as part of the Statement of Case and Facts, Summary of Argument, and Argument.  Appellants' Brief, pages 44, 45, 48, 49, 53, 53 ftnt. 13, 59.

created, of applying FRCP 59 as "[t]he Levys have failed to describe for this Court any intervening change in the controlling law, or any clear error in the district court's initial ruling." [Emphasis Added]  <u>Appellees' Brief,</u> page 47.

Thus, the Appellees have instead apparently sought to imbue in this case a 'harmless error' creation that this Court needs to review the entirety of the 3036 pages of the Joint Appendix, most relating to the Motion for Summary Judgment and Reconsideration motion, to ascertain whether the trial court 'abused its discretion,' *despite the trial Court never properly exercising its discretion to begin with.*   Respectfully, the point of having Standards of Review for trial and appellate courts is so that a proper delegation of authority is done by Courts, thus furthering judicial economy for the Courts and litigants.   This Court is not the most 'efficient' vehicle for examining a Record which is far greater than 3036 pages, and then somehow precognitively ascertaining whether and how the District Court judges would *exercise their own discretion* on an interlocutory order to grant a Motion for Reconsideration.[4]   Chief Judge Chasanow and Judge Connelly are.   This is a function at law, specified under this Court's precedents and the specific wording of

---

[4] This was particularly true at the time of the ruling by Chief Judge Chasanow, as the duty imposed on reviewing a Motion for Summary Judgment determination, done on March 17, 2009, involved reviewing the entirety of the record and file, which has since been somewhat reduced with the 2010  amendments to FRCP 56. *See e.g. Sinclair v. Mobile 360,* 417 Fed. Appx. 235, (4th Cir. Dec. March 3, 2011)(unpublished).

FRCP 54(b). *See Aikens v. Ingram,* 2011 U.S. App. LEXIS 14298, at *20-21 (Dec. July 13, 2011) (*en banc*)(J. Diaz, concurring)(On question of whether Rule 60 relief was appropriately denied in District Court judge's discretion, that "inherent in the deferential abuse-of-discretion standard is an overarching command of 'judicial restraint, which...safeguard[s] the superior vantage points of those entrusted with primary decision responsibility, *quoting Evan v. Eaton Corp.,* 514 F.3d 315, 320-21) (4ᵗʰ Cir. 2008)..."Standards of review [...are] the very bedrock of our decision-making authority, [and] must mean something."); *see also Aikens,* at *81  (J. Davis, dissenting)("The Supreme Court recently reminded us that '[a] trial court has wide discretion, when, but only when, it calls the game by the right rules.") [5]

## B. This Court Should Schedule Oral Arguments to Resolve What Standard is Applicable for FRCP 54(b) Motions for Reconsideration in General and on Remand

Though disagreeing on the 'cause'—perhaps one thing that the parties agree on is a desire not to 'waste' further time.  This is why, though perhaps not absolutely necessary with respect to Question Presented #1, (but nevertheless appropriate in

---

[5] To be clear, however, and as noted in the Appellants' Brief and *infra*, if the correct standard had actually been applied by the trial Court, under the facts existing presently in this case, Appellants would contend *inter alia* that the error in not granting Reconsideration constituted an abuse of discretion, as the Appellants were acting upon a previous Court's Order regarding delegating discovery and other scheduling matters to Magistrate Judge Connelly, which were *still pending* at the time of the Article III Judge's Ruling on the dispositive motion.

conjunction with the importance of Questions Presented #2 and #3), it is the Appellants who have explicated a desire for oral arguments. This is despite the reversible error already discussed *supra* on the wrong standard of review employed by the trial court, because the *right* standard of review, has as Chief Judge Chasanow acknowledged in other reported District Court cases, "[i]n the Fourth Circuit, the precise standard that should govern a motion for reconsideration of an interlocutory order is unclear." *Metiti v. Activus Fin. LLC,* 2009 U.S. Dist. LEXIS 99869, 10-11 (D. Md. 2009).

The Appellants' concern, thus, would be even with a reversal by this Court, in accord with *Saint Annes,* is that the parties' eventual disagreement on this 'standard' would eventually require, at a minimum, a repeat appeal with this Court. This case, therefore, provides an appropriate vehicle for review to examine this issue, as Chief Judge Chasanow has already specified that upon remand, that the appropriate standards in which she would examine the Motion for Reconsideration in accord with Fourth Circuit case law would be 'unclear.' *Metiti, supra,* at 11; *see also Foreman v. Unnamed Offices of the Fed. Bureau of Prisons,* 2010 U.S. Dist. LEXIS 121532 (D. Md. 2010)(J. Chasanow)(Granting Reconsideration under FRCP 54, while noting that "the precise standard that should govern a motion such as this one is somewhere unclear" ).

9

Thus, as the Appellants contend, the appropriate discretion to be afforded trial court judges, should be, as stated directly and indirectly in the wording of FRCP 54(b), that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time." There are no limitations stated in the Rule for such exercise of discretion, which remains with the trial court. *See also Aetna Cas. & Sur. Co. v. Wallace & Gale Co. (In re Wallace & Gale Co.)* 284 B.R. 557, 558 (D. Md. 2002)(J. Messitte)("The Court has authority to reconsider its prior, non-final orders pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. It is not bound by the strictures of Fed. R. Civ. P. 59 or 60; its revisory authority is essentially unfettered. *See, e.g., Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 12, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge")); *High Country Arts & Craft Guild v. Hartford Fire Ins. Co.*, 126 F.3d 629, 635 (4th Cir. 1997)(J. Niemeyer)("Finally, even if the court had in fact issued an order earlier in the case precluding or disposing of the claims for unfair trade practices, it was interlocutory so that the court clearly had the power to change its mind before final judgment. *See, e.g., Hardin v. Hayes*, 52 F.3d 934, 938 (11th Cir. 1995) (stating that court has

10

plenary power over interlocutory orders); *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991) (noting that district court has "general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment"); *see also* Fed. R. Civ. P. 54(b)."). (App. 2230)[6] [7]

---

[6] Even though it appears that the Appellees have, reluctantly, acknowledged that the trial court erred in using the wrong standard of review, (*see* Appellee's Brief, page 44), it remains cemented under FRCP 54(b) that this more relaxed standard applies "however designated...[and] may be revised at any time..." Yet, it is important to note that the Appellant specifically challenged at the District Court the Appellees' attempt at using a 'restrictive' standard of FRCP 59, and as this issue is explicitly argued on appeal, it is proper for this Court to rule on what standard(s) apply to FRCP 54 Motions for Reconsideration, particularly given the important ancillary effect of immediate legal clarity for trial courts in this Circuit in general, and on any remand, for the trial court in this case in particular. (App. 2229-2230, Appellant's Brief, pages 48, 53, 54, 57, 59)

[7] Purely as an example of what another Circuit has concluded to be the appropriate standards to be applied to Motions for Reconsideration under FRCP 54(b), is the D.C. Circuit Court of Appeals, in a recent discussion on this subject by Judge Royce Lamberth in *DL v. District of Columbia,* 274 F.R.D. 320,  323-324 (Dec. May 09, 2011).

"I. Legal Standard

a. Motion for Reconsideration under Rule 54(b)

"Though "no express rule . . . is needed to justify a motion for reconsideration," Federal Rule of Civil Procedure 54(b) "by its terms allow[s] the trial court to modify its earlier order." *Dellums v. Powell*, 566 F.2d 231, 234, 184 U.S. App. D.C. 339 (D.C. Cir. 1977); *see also Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) ("Rule 54(b) governs reconsideration of orders that do not constitute final judgments in a case."). Although this Rule provides a procedural mechanism for courts to reconsider their prior opinions, the actual language of Rule 54(b) sets forth

### C. Though Likely Unnecessary to Argue in the Posture of this Case, if *Arguendo,* the Appellant had to Argue the Standards under FRCP 59 , the Facts of this Case Satisfy this Standard

It is the Appellants' *primary* argument on Question Presented #1, that reversal and remand is required, due to the trial courts' failure to use the applicable standard of review on the Motion for Reconsideration filed of FRCP 54(b), and instead specified that it was using the very 'strict' standard of the *inapplicable* FRCP 59. The arguments made in the Appellant's Brief and *supra* in the Reply Brief, discuss this 'clear' error.

As a matter of law, this should be sufficient, for this Court to vacate the trial Court's decisions in this regard.   This error is not being furthered with this Court,

---

little guidance as to when such review is appropriate. To fill this gap, courts in this district have held that "relief upon reconsideration . . . pursuant to Rule 54(b) is available 'as justice requires.'" *Hoffman v. District of Columbia*, 681 F. Supp. 2d 86, 90 (D.D.C. 2010) (quoting *Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000)). "[A]sking 'what justice requires' amounts to determining, within the court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell*, 355 F. Supp. 2d at 539; *see also United States v. Second Chance Body Armor, Inc.*, 709 F. Supp. 2d 52, 55 (D.D.C. 2006)). The relevant circumstances that may warrant reconsideration include "whether the court 'has patently misunderstood a party, has made a decision outside the adversarial issues presented to the court by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court.'" *Ficken v. Golden*, 696 F. Supp. 2d 21, 35 (D.D.C. 2010) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (alterations in original); *see also Hoffman*, 681 F. Supp. 2d at 90 (same); *Capitol Justice, LLC v. Wachovia Corp.*, 605 F. Supp. 2d 187, 190 (D.D.C. 2009) (same)."

12

just so Appellants can get a reversal, but because of the Appellants' belief and claim that significant and 'grievous' error by the trial court exists in not only not granting the Appellants' Motion for Reconsideration, but in not even *considering* the merits and attachments of the Motion, because Judge Chasanow stated that it did not rise to the "three limited grounds for granting a motion for reconsideration pursuant to [FRCP] 59(e)...[and] is not a license to reargue the merits or present new evidence...[and] an extraordinary remedy which should be used sparingly." [Citations Omitted] (App. 2722) .

As noted in the Joint Appendix, from September 17, 2008, up through and literally to the day of Chief Judge Chasanow's grant of most of the Appellee's Motion for Summary Judgment on March 17, 2009, Appellant's Counsel and Appellee's Counsel were arguing *discovery* issues between the parties with Judge Connelly. (App. 1037-1291,1357-1362, 1701-1712, 1726-1846, 1898-2073). Thus, there was about 600 pages of materials related to various discovery issues and disputes being argued in the case by the parties with Judge Connelly in these six (6) months, many involving lengthy written and oral discussions by the parties.

There is nothing in the record that Judge Chasanow was intending to issue an Order on dispositive motions *while Judge Connelly was still addressing these discovery disputes and discovery was still open,* particularly as it is Appellants'

13

contention that this Order *contradicted* her order of February 20, 2008, which specified that the case was referred to Judge Connelly for "all discovery and related scheduling matter."[8]   (App. 302)    This Order appeared to take Judge Connelly unawares as well, as Judge Connelly issued a 'Paperless Order' noting that various pending filings were denied primarily as moot, a few hours after Judge Chasanow's Order was issued.  (App. 18, D.E. 106, 107)   This was further explicated by Judge Connelly later, as "in light of Judge Chasanow's ruling dismissing all of Plaintiffs' claims except for the Section 1983 claim against Defendants Butler, Lyew and Ladd, this motion is moot." (App. 17, D.E. 121)   Similarly, the 30(b)(6) deposition that Judge Connelly confirmed remained "not completed" was also found moot. (App. 17, D.E. 121, 122)    With respect to another Discovery issue, which was part of the Motion for Reconsideration filed with the Court (D.E. 114), Judge Connelly also denied this, based on the same erroneous application of the "three limited

---

[8] "As a general rule, granting summary judgment prior to the completion of all discovery is inappropriate. *See Snook v. Trust Co. of Ga. Bank of Savannah*, 859 F.2d 865, 870 (11th Cir. 1988); *Visa Int'l Serv. Ass'n v. Bankcard Holders,* 784 F.2d 1472, 1475 (9th Cir. 1986); *see also Celotex*, 477 U.S. at 322 (summary judgment appropriate only "after adequate time for discovery"). Under Federal Rule 56(f), the district court has discretionary authority to deny a motion for summary judgment in response to the nonmoving party's plea for additional discovery."

*Phillips v. General Motors Corp*., 911 F.2d 724, *13 (4th Cir. 1990)

14

grounds for granting" under FRCP 59(e) as Judge Chasanow erroneously relied upon.[9] (App. 18, D.E. 123)

As exhaustively noted in the Statement of the Case and Facts provided by the Appellants, there was a lengthy and complicated course of proceedings ongoing with discovery by both parties, when Judge Chasanow's ruling was issued. Appellant's Brief, pages 23-41, 47-49.   Typically for this Court, a claimed error for a Court denying a Motion for Reconsideration, is necessarily fact specific, even though because of the legal error by the trial Court in not applying FRCP 54, this is likely unnecessary for this Court to do.  Here, there are over 20 pages of facts included in the Brief, incorporated into the arguments, (not including the hundreds of pages of the Joint Appendix cited in the Brief), that form the crux of the contended error by the Trial judges to not grant the Motion for Reconsideration.

The Appellees claim that "the Levys' Motion for Reconsideration was grounded on a purported failure of the district court to permit final resolution of a few outstanding discovery issues." Appellee's Brief, page 44.  This respectfully mischaracterizes the nature of the error contended by Appellants.   There were a number of pending discovery disputes on outstanding discovery, including the

---

[9] Because of the interrelated nature of the Reconsideration sought in this case with the assigned Article III and Magistrate judges, the Motion for Reconsideration filed, specified that it was for "reconsideration to March 17, 2009 Decisions by Judges Chasanow and Connelly."  (App. 2084)

FRCP 30(b)(6) deposition of the City of New Carrollton Administrator, whose testimony would presumably cover all the Defendants/Appellees case. But it was the (1) outstanding discovery, *combined with*; (2) not being given an opportunity to supplement any opposition to dispositive motion with new discovery, *combined with;* (3) the Appellants' reasonably relying upon the existing Order by Judge Chasanow as confirmed with the transcripts with Judge Connelly, that so long as the discovery was still pending and open, that there would not be a ruling on the dispositive motion and instead would be time to supplement, *combined with;* (4) even after the Appellants very quickly attempted to provide a supplement in the Motion for Reconsideration on the dispositive motion Opposition, both Judges Chasanow and Connelly stated that they would not and could not consider the filing and attachments, as not falling under the auspices of the inapplicable FRCP 59(e). Together, it is argued that these at least four (4) trial court errors, that were respectfully not the fault of the Appellants, justify the grant of the Motion for Reconsideration.

Even under the much stricter FRCP 59(e), the Appellants contend that they have satisfied the specified error, helping illustrate the weakness of the Appellee's apparent contention that there is no basis to even permit the Trial Court to consider

16

ruling upon the Motion for Reconsideration under the proper Standard of Review applicable of FRCP 54(b).

The most recent example of a specific example where this Court has *Robinson v. Wix Filtration Corp. LLC,* involving an affirmance of summary judgment, over dissent, when a final judgment was entered when the attorney apparently did not get the e-filed copy of the Motion for Summary Judgment. The facts *sub judice* are readily distinguishable.

> "In this case, Appellant's counsel was aware that he was experiencing e-mail difficulties during the summer months and that the dispositive motions' deadline was fast approaching. As such, to keep his client reasonably informed as to the status of the litigation, he should have regularly accessed the court's docket to monitor case activity, notified the court and opposing counsel of his computer problems, or found another way to stay informed regarding any developments in the case -- particularly since the local rules required electronic filing. *See, e.g., Gibson-Michaels v. Bair*, 255 F.R.D. 306, 307 (D.C. Cir. 2009) (finding that failure to receive notice of filing did not absolve counsel of his "affirmative duty to stay apprised of the status of the case"); *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005) (finding that "a litigant who invokes the processes of the federal courts is responsible for maintaining communication with the court during the pendency of his lawsuit"); *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004) (noting that "attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant"); *Edward H. Bohlin Co., Inc. v. Banning Co., Inc*., 6 F.3d 350, 357 (5th Cir. 1993) (finding that "[a]

17

party has a duty of diligence to inquire about the status of a case"). Appellant's counsel, however, never accessed the court's docket after August 8, 2008, nor did he contact opposing counsel or the court to notify them of his computer problems, even though only he was in a position to protect Appellant from precisely what occurred here. *Thus, the cause for the entry of judgment was Appellant's counsel's carelessness*, not his alleged e-mail difficulties, and as noted above, attorney inattentiveness toward the pending litigation is not excusable under Rule 60(b). We therefore find that Appellant would not have received relief under Rule 60(b) because his counsel's calculated decision -- to inform no one of computer malfunctions of which only he was aware, and to deliberately refrain from any attempt to ascertain whether summary judgment motions were filed on the date he knew they were due -- *in light of local rules requiring electronic filing*, cannot be characterized as "excusable neglect." *See, e.g., Zimmer St. Louis, Inc. v. Zimmer Co.*, 32 F.3d 357, 361 (8th Cir. 1994) (concluding in the Rule 60(b) context that failure to receive notice of final judgment did not warrant relief, absent evidence that the official docket failed to reflect entry of final judgment).     [Emphasis Added]

*Robinson v. Wix Filtration Corp. LLC,* 599 F.3d 403, 413 (4th Cir. 2010),

Thus, Appellants would contend that, although it appears unlikely that this legal issue would require this Court to do a detailed analysis of whether the trial Courts' denial of Reconsideration was an 'abuse of discretion,' based on the error noted *supra* of using the wrong standards in which to exercise discretion, the focal point of the Appellants' claims for Reconsideration remain strong and significant, in

18

that the Appellant was reasonably relying on existing Court Orders on the pending Discovery matters being adjudicated (which were never completed), prior to having to file any Supplement with the Court.  In comparison with the *Robinson* case, which appears to be a 'close call' (though done officially on a FRCP 60 basis), the Appellant was relying on the existing Court Orders at that time, which respectfully cannot be characterized as 'excusable neglect.'  Had the Appellants been advised that there would be a diversion from Judge Chasanow's previous Order of Judge Connelly exercising discretion in completing discovery, then an alternative would have been arranged, rather than the both counsels spending greater than 600 pages of legal work (including attachments) arguing the discovery disputes that were ongoing at the time.

19

**II. EVEN ASSUMING *ARGUENDO,* THAT THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE SECOND MOTION FOR LEAVE TO AMEND COMPLAINT, DONE WITHOUT ANY ADJUDICATION WHATSOEVER OF THE MERITS, THERE WAS NO LEGAL BASIS UNDER A *RES JUDICATA* 'CLAIM-SPLITTING' THEORY, TO LATER PRECLUDE THE LEVY IV CASE THAT WAS FILED WITHIN THE STATUTE OF LIMITATIONS FOR §1983 CAUSES OF ACTION, ON THE SEPARATE ALLEGATIONS THAT OFFICER LADD BRANDISHED A FIREARM AND ACCORDING TO THE EXPERT WITNESS REPORT, SEPARATELY ASSAULTED APPELLANT MARK LEVY, MONTHS AFTER ANY "COMMON NUCLEUS OF OPERATIVE FACTS" TO BE ADJUDICATED IN LEVY II AND LEVY III.**

This Question Presented involves the related arguments of whether the factual allegations underlying the Levy IV (Appeal # 10-2011) case should be argued as part of the Levy III case (Appeal # 10-2009), or alternatively permitted to be tried as a separately filed §1983 suit of Levy IV (which may thereafter be consolidated with Levy III, depending on whether this Court reverses, vacates, and/or remands the rulings in that appeal).  With respect to the denial of the <u>Motion for Leave to File Second Amended Complaint</u> on this issue, Appellant respectfully relies on the arguments presented in the <u>Appellant's Brief,</u> except to add that this Court should reverse on this issue if this Court reverses, vacates, and/or remands other parts of Levy III, as Judge Chasanow's basis for not granting the Motion at the time was out of 'timeliness' concerns and a statement that the "Defendants would be

20

prejudiced...[as they] would have to expend additional time, expense, and preparation in order to respond adequately to the additional allegations." (App. 1854-1855)

Should this Court Order further trial court proceedings, argued as part of the other Questions Presented, and in light of the presumption of liberal amendments to pleadings under FRCP 15(a), Appellants contend this would essentially 'moot' these stated concerns of Judge Chasanow. Thus, this Court should consider reversing on this basis. *See e.g. Johnson v. Mayor of Balt. City*, 2011 U.S. Dist. LEXIS 104919, 7-8 (D. Md. Sept. 15, 2011)(J. Bennett)("Under Federal Rule of Civil Procedure 15(a), a plaintiff may amend her complaint with permission from the court, which "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The United States Court of Appeals for the Fourth Circuit recently explained that "[t]his liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Sciolino v. City of Newport News,* 480 F.3d 642, 651 (4th Cir. 2007) (*quoting Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006) (*en banc*)). "For this reason, [the Laber Court] ha[s] interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would  be prejudicial to the opposing party, there has been bad faith on

21

the part of the moving party, or the amendment would have been futile.'" *Id. (quoting Laber*, 438 F.3d at 426).")

However, the main argument by Appellants on this issue, would be that the trial Court's later determination to dismiss under FRCP 12(b)(6), done in direct contradiction of the three (3) year statute of limitations applicable for §1983 actions in Maryland, is unsustainable under a purported *res judicata/*claim-splitting theory. *See Lewis v. Clark*, 534 F. Supp. 714 (D. Md. 1982)("The applicable statute for actions brought under 42 U.S.C. §§ 1983, 1985, in situations alleging violations of due process, is the three-year statute of limitations of [Md. Cts. & Jud. Proc. § 5-101].")

No merits determination was ever contemplated to have been done by the District Court, based on the Appellees' insistence that they needed 'discovery' and therefore would be prejudiced in arguing the new cause of action. The Levy IV case was very different from previous causes of actions, in that it was contended that Defendant/Appellee Officer Ladd brandished a firearm against the Appellant, the night before a trial involving his employer, the City of New Carrollton. At the time (and relevant to the claim by Appellants that 'estoppel' principles are involved (Appellant's Brief, page 66), it was the Appellee's bullet point headings that they would; (1) "be prejudiced by lack of opportunity to conduct discovery," (2)

22

"Plaintiffs' Allegations Alter the Nature of the Claims," and (3) that "Plaintiff's Actions are a Bad Faith Attempt to Delay [the trial]." (App. 1032, 1034, 1035) No discovery was permitted to **ever** be conducted, as a result of the trial Court's rulings that did not purport to even touch the merits.

Now, for the Levy IV Complaint, the Appellee's sing a different tune, for the "absurd contention that the factual allegations underlying Levy IV are not part of the same transaction or series of transactions at issue in Levy III." Appellees' Brief, page 57. Actually, the "absurd contention" was the Appellants reciting what the Appellees' previously stated bases, *supra,* were for the denial of the Second Amended Complaint, including that they "Alter the Nature of the Claims [From Levy III]" and reciting Judge Chasanow's District Court opinion of *Sensormatic Security Corp., v. Sensormatic Electronics Corp.,* 329 F. Supp. 2d 574 (D. Md. 2004), *a contract cause of action* case, on what the focal point of the analysis should be when both suits arise out of the same contract.

Irrespective of the Appellants' brief attempt to distinguish the District Court case of *Sensormatic,* and as there are zero reported opinions in this Circuit on 'claim-splitting,' particularly when considered in conjunction with a previous unsuccessful attempt to amend the complaint, this Issue poses a question of First Impression for this Court. It is the Appellants' contention on appeal, though having

23

somewhat distinguishable facts, that this Court should consider the Second Circuit's treatment of a similar issue in *Curtis v. Citibank N.A.,* 226 F3d 133 (2nd Cir. 2000). (App. 3019)

Changing the factual scenario of the Levy IV complaint slightly, illustrates the absurdity and unfairness of applying a 'claim-splitting' doctrine, to new factual actions by Defendants against Plaintiffs, when they are *already* in litigation, and particularly when it is contended that the actions of the Appellee/Defendants are at least indirectly meant to be retaliatory for the existing litigation.   Let's assume instead of Appellee Officer David Ladd merely brandishing his firearm against Appellant Mark Levy, which the Expert Witness report by the Police Practice expert Joseph Key already prepared at the time of the filing of the Levy IV Complaint opined "constituted a second degree assault against Mr. Levy," that Officer Ladd shot and paralyzed Mr. Levy.  (App. 2930)

Rather than immediately filing an 'Amended Complaint' on the existing case, Appellant due perhaps to the uncertain amount of medical damages or to get the expert witness testimony lined up beforehand, waits a number of months or even a year, before deciding to seek Leave to Amend the complaint under FRCP 15, as a matter of judicial economy.  For whatever reason primarily related to timing, Leave to Amend is opposed by the Defendants, and thus the trial court denies the Motion,

24

though said denial is *without prejudice,* as there is no remote discussion of the merits involved with the denial, and no discovery every permitted or conducted.  In light of this ruling, the Appellant seeks millions of dollars in a civil suit against Officer Ladd, all causes of action being sought within the appropriate **Statute** of Limitations.[10]

Is this Court really going to say, as the trial court suggests with its 'claim-splitting' ruling  and as requested as a matter of law to be applied by the Appellees, that the paralyzed plaintiff has no remedy and the case should be dismissed on a 12(b)(6) Motion to Dismiss, because of the simple denial of a Motion for Leave to Amend Complaint?  Or that because the shooting was, perhaps on some level,

---

[10] Although this Appeal involves FRCP 15(a), this Court has already spoken on the importance of recognizing the legislative imperative associated  with Statutes of Limitations on FRCP 15(c).    "[S]tatutes of limitations are legislative determinations that give defendants predictable repose from claims after the passage of a specified time, and courts must, in recognition of the separation of powers, hesitate to extend or ignore them for judicially created reasons. *See Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797 (4th Cir. 2001). In light of these policies, Rule 15(c) must be understood to freely permit amendment of pleadings and their relation-back so long as the policies of statutes of limitations have been effectively served. *See* 3 James Wm. Moore, et al., *Moore's Federal Practice* § 15.19[3][a] (3d ed. 1997) ("The purpose of Rule 15(c) is to provide the opportunity for a claim to be tried on its merits, rather than being dismissed on procedural technicalities, when the policy behind the statute of limitations has been addressed")...[w]hen that party has been given fair notice of a claim *within the limitations period* and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back. [Emphasis as Shown]. *Goodman v. Praxair, Inc.,* 494 F.3d 458, 467, 471 (4th Cir. 2007)

arising out of the *existing* legal dispute, based on malicious purposes by the Defendant, that this behavior actually gives license for Defendants to threaten Plaintiffs to the point of creating *new causes of action,* and that the Defendants get a walk for doing this? This was not a case where there was a suit previously involving the assault between the parties, or any actions alleged to have transpired between the Appellees and the Levys on October 1, 2006.   Though the Appellants respectfully disagrees with the denial of the Second Motion for Leave to File Complaint,  there is simply no justified basis to then grant a Motion to Dismiss, on an otherwise proper and timely filed §1983 Complaint.   Yet, if Judge Chasanow's ruling is affirmed, this would be the end result.

> "Plaintiff previously attempted to advance the allegations in the instant complaint in a motion to amend the complaint in a previous case.  As noted above, this court denied that motion because of the timing of the request to amend.  Had the allegations been timely asserted in the previous action, they *could have* been adjudicated. Therefore, although the specific facts supporting the new cause of action have not actually been heard on the merits in court, *they could have been.*  Defendants argue, and this court agrees, that the facts advanced here are part of a series of transactions that Plaintiff has had with the defendants over the course of several years..." [Emphasis Added]    (App.  3031-3032)  (Judge Chasanow's Memorandum Opinion)[11]

---

[11] [11] This usage of the word *could*, in fact, significantly differs from any analysis in the *Curtis* case, discussed *infra,* where the Second Circuit used the word *should*

It should be also noted that the mention by Judge Chasanow that somehow *res judicata* justified the grant of the Motion to Dismiss, appears contradictory to the legal basis for *res judicata*, to the extent said mention is based on the traditional *res judicata* analysis, since as noted earlier in Judge Chasanow's opinion, *res judicata* functions and applies only when "there was a final judgment *on the merits*," and there was never any merits adjudication made on the October 1, 2006 assault and §1983 claim involving Officer Ladd and the City of New Carrollton in Levy IV.  [Emphasis added].  (App. 3030, 3031)

Thus, it appears that at least some of the analysis of the *Curtis v. Citibank, NA* case from the Second Circuit, which has been adopted by a number of Sister Circuits, should help fill in the void associated with this legal issue on appeal.

> "While claim preclusion bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit. *See SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996). The crucial date is the date the complaint was filed. The plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims. *See id*.

---

*have been brought."    Curtis,* 226 F.3d, at 140.  This error poses an additional difficulty with this Court permitting the trial court's ruling to stand.

....

"While by filing Curtis II the plaintiffs were clearly trying to avoid losing their claims -- which was the effect of the denial of leave to amend the Curtis I first amended complaint -- they were and are entitled to have some of those claims heard. The district court's purpose in denying leave to amend in Curtis I was to keep that case manageable, and given the many delays and disputes over the scope of discovery in Curtis I, its concerns were well-founded. Allowing plaintiffs to file a new complaint on their subsequently arising claims does not vitiate that purpose.

The dismissal of Curtis II therefore must be reversed in part. Plaintiffs may proceed on their Curtis II claims of retaliation and constructive discharge to the extent they arise out of events occurring subsequent to the filing of the first amended complaint in Curtis I. This result balances the trial court's need to manage and ultimately decide its cases with the plaintiffs' right to litigate all of Citibank's allegedly unlawful conduct. Once Curtis I is decided, questions of issue preclusion may arise, but it would obviously be speculative to discuss  them now.

Accordingly, we reverse the dismissal of Curtis II in its entirety as duplicative of Curtis I insofar as the order dismissed non-duplicative claims. To the extent that Curtis' retaliation claim and Williamson's constructive discharge claim arose out of events occurring after the first amended complaint was filed, their dismissal on procedural grounds in Curtis I does not bar their refiling as duplicative in Curtis II. In all other respects, however, the district court acted within its discretion in dismissing the claims asserted in Curtis II that were *duplicative* of those in Curtis I and that portion of its order is affirmed.

28

[Emphasis Added] *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139, 140-141 (2d Cir. N.Y. 2000)

Although not 100% on point with the facts of the case *sub judice* (which may explain be why both parties claim that *Curtis* supports their position), the Appellants nevertheless maintain that *Curtis* is instructive and should be considered by this Court on the Question of First Impression involved. To the extent that the Appellees claim that *Curtis* is supportive, this appears to be an 'overreading' of the case, for as noted *supra,* Curtis involves *duplicative* claims being presented earlier by the Plaintiffs. *Id.* at 141. In fact, upon review of most cases that discuss any sort of 'claim-splitting,' they are often done by self-represented parties, which poses a problem, particularly when there are multiple cases filed, sometime in multiple jurisdictions, on what is a single event that has been obviously *duplicative*. Here, however, there is no genuine way to stretch 'duplicative' to the claims involved with Levy IV, of an assault by a police officer on Mr. Levy, when no previous assaults are alleged to have occurred against the Appellants in this case. Nor were any of the actions which necessitated the Levy III complaint, including the primary acts described occurring five (5) months prior in May 2006, or even the last minor act described in the Amended Complaint taking place two (2) months prior, (in August

29

2006), part of the later assault alleged to have been committed by Officer Ladd in

the Levy IV Complaint on or about October 1, 2006.  (App. 249-253)

**III.   THE TRIAL COURT ERRED, IN VIOLATION OF FRCP 26(B)(2), THAT PERMITS STIPULATIONS BETWEEN PARTIES, AND AS AN ABUSE OF DISCRETION, IN NOT CONSIDERING THE NOTED POLICE PRACTICES EXPERT'S REPORT FROM BEING CONSIDERED ON SUMMARY JUDGMENT, AND IN NOT TESTIFYING AT TRIAL, DESPITE REPEATED AGREEMENTS IN JOINT STATUS REPORTS THAT A SUPPLEMENTAL REPORT WOULD BE PROVIDED BY THE EXPERT AFTER SUFFICIENT DISCOVERY HAD BEEN ADDUCED , AND LACK OF ANY PREJUDICE INVOLVED IN THE PURPORTED 'SIX WEEKS' LATE SUPPLEMENTAL REPORT.**

Appellees claim that the Appellant's argument in their Brief that the Expert

Report of the police practices expert, Charles J. Key, would potentially change the

rulings of Chief Judge Chasanow on the Motion for Summary Judgment, as well as

the "'eventual trial on the §1983 claim'...[ is] wholly unconvincing in the absence of

any explanation as to how Mr. Key's opinions would have accomplished the task an

as to which claims the Levys refer." Appellees' Brief, page 63.   This is despite the

specific reference in the Appellant's Brief, to the detailed Expert Witness Report,

CV, and List of Cases, which is included in the record and cited to in Appellant's

Brief at page 68.  (App. 892-926)

30

Furthermore, the Appellee's claim that "[i]n essence, the Levys suggest that Mr. Key, a supposed police liability expert, could surplant (sic) the legal analysis and opinions of Judge Chasanow regarding the reasonableness of Defendants' actions." Appellee's Brief, page 64.  Not quite.  What the Appellants are arguing is that the trial court erred in excluding the Plaintiff's expert witness from, not only being able to testify at trial, but having his final report dated March 31, 2008 considered.  This was at most was six (6) weeks later than Judge Chasanow would have preferred, though it is contended by Appellants in their Brief  that there was no scheduling violation involved as it was stipulated fact that Mr. Key would be providing a Supplemental report, after reviewing the depositions of the Defendant Officers' deposition testimony, which was noted in many Joint Status reports between the parties, as well as correspondences between the parties. Appellant's Brief, pages 69-72.  However, as any written or verbal testimony  was prohibited from being considered due to Judge Chasanow's ruling almost a year later, on March 17, 2009, the Appellees apparently request in their Brief further 'proof' ostensibly requesting that the Appellants argue that any error by the trial court constitutes 'harmless error'.

On the issue of the 'supposed' expert's qualifications and reports, broached by the Appellees, and how that should interact with Motions for Summary Judgment,

this Court should consider and adopt what Federal Judge Catherine Blake stated

about Mr. Key in a case about four (4) years prior to his work in the Levy case, and

how his expert report affect the Motion for Summary Judgment.

> "Finally, both parties have *proposed well-qualified expert witnesses on police use of force*, who have reached contrary conclusions on whether the officers' actions were consistent with standard police practices and were objectively reasonable. *Charles J. Key, Sr.,* retained by the plaintiffs, concludes that "the actions of the officers in this case were not objectively reasonable and not consistent with standard police practices, policy, and training." (Defs.' Mem. at Ex. 29, Key Aff., at P10). Samuel M. Wichner, retained by the defendants, concludes that "the Maryland Transportation Authority officers acted appropriately in all areas involving this incident." (Id. at Ex. 27, Wichner Rep., at 13.) The two experts would offer conflicting opinions regarding whether the use of deadly force was warranted, based on the facts known and observable to the defendant officers. (Id. at Ex. 29, Key Aff., at P13-16; id. at Ex. 27, Wichner Rep., at 9-13.) *This conflicting expert witness testimony proffered by the two parties supports the conclusion that genuine factual disputes exist, precluding the entry of summary judgment*. n30

> FOOTNOTES

> n30 The defendants have filed a motion in limine to preclude Key's testimony, directed both to evidence at trial and to evidence presented in the plaintiffs' memorandum in opposition to the defendants' motion for summary judgment. Although there are certain aspects of Key's proposed testimony that might be excluded at trial, his testimony generally is admissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 125 L.

Ed. 2d 469, 113 S. Ct. 2786 (1993), *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999), and relevant Fourth Circuit precedent. The Fourth Circuit has held that expert witness testimony on police use of force may be admissible in cases alleging excessive force, including expert testimony on the ultimate issue of whether a particular use of force was objectively reasonable under the circumstances. See *United States v. Mohr*, 318 F.3d 613, 622-25 (4th Cir. 2003); *Kopf v. Skyrm*, 993 F.2d 374, 377-79 (4th Cir. 1993). Ultimately, the trial court must determine whether the proffered expert testimony is valid and reliable, and whether it will assist the trier of fact. *See United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000). *The plaintiffs have introduced ample evidence establishing Key's experience and general methodology, and the defendants have failed to raise any serious doubts regarding the overall validity, reliability, or relevance of Key's testimony.* Nonetheless the motion to preclude will be denied without prejudice, so that the defendants may raise any remaining specific objections to Key's testimony at trial." [Emphasis Added]

*Waterman v. Batton,* 294 F. Supp. 2d 709, 721 (D. Md. 2003).

As it is contended that Judge Chasanow erred in not permitting the entirety of Mr. Key's expert testimony, which was originally provided to the parties in a written report, the trial Court erred in granting the Motion for Summary Judgment, and the case should be remanded for Judge Chasanow to consider the Report in any further consideration of the Motion for Summary Judgment.   Furthermore, it was

contended by Appellants that this exclusion justified a reversal on the eventual trial

on the §1983 claims against Officers Ladd, Lyew, and Butler, where Appellants'

Counsel "note[d] my objection to the exclusion of Joseph Key, who we wanted as

an expert witness." (App. 2731).  Appellants' Brief, pages 45, 67, 73, 74.  In

particular, the reversal of the trial on the §1983 claims are justified, as Mr. Key

specified in his report as Opinion #5, that "it is my opinion that the searches of Mr.

Mark and Stanley Levy's Vehicles by Sergeant Mark Butler and/or Corporal

Vincent Lyew[12] were *not* objectively reasonable and *not* consistent with accepted

standards of police practices, policies, and training," (App. 903) noting *inter alia*

that,

> "The [Safety Equipment Repair Orders] strongly support
> Mr. Levy's version of the incident.  Unless a light/lamp is
> observed to be broken or absent, I know of no way to
> determine that headlights, taillights, turn signals, hazard
> warning lamps, etc. can be tested without entering the
> vehicle and activating them.  At least some of each of
> these items were checked as violations for each of the
> vehicles.  There was no testimony that these lights were
> broken or absent.  Nor do the photographs of the vehicles
> how any such condition.  It is obvious, then that either
> Sergeant Butler and/or Corporal Lyew entered the
> vehicles to activate and check the lighting systems.  Such

---

[12] Officer David Ladd was subject to eventual jury verdict under a theory of
Supervisor Liability, since there was sufficient evidence that he ordered the
subordinate officers to conduct the search and seizures, and therefore Mr. Keys'
testimony would have been similarly persuasive to the finder of fact against Mr.
Ladd as well.  (App. 21)

entry was not objectively reasonable and not consistent with accepted standards of police practices, policies, and training."   (App. 904)

These findings respectfully went to the heart of the claimed Constitutional violations for Appellees Ladd, Lyew and Butler, as was discussed by Judge Chasanow in permitting these claims to be argued and tried with the jury.  (App. 1891)   By the contended erroneous exclusion of the Appellant's chosen expert witness to verify as a police practices expert, the jury was precluded for considering Mr. Key's testimony for themselves, and this testimony, from a qualified and highly trained expert and non-party to the litigation, would have been persuasive enough to the jury to have affected the verdict, thereby justifying a new trial on the §1983 claims against Appellees Ladd, Lyew and Butler.

## **CONCLUSION**

For the foregoing reasons, Appellants respectfully requests that this Court grant the requested relief in Appellants' Brief and Reply Brief.

35

RESPECTFULLY SUBMITTED ON OCTOBER 17, 2011

_____/s/_____

Michael Wein, Esquire

*Law Offices of Michael Wein*
7829 Belle Point Drive
Greenbelt, MD 20770
(301) 441-1151
Fax-(301) 441-8877
weinlaw@hotmail.com

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1.  This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because this brief contains 9056 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii).[13]

2.  This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using the word processing system Microsoft Word in font size 14, type style Times.

_____/s/_____
Michael Wein, Esquire

---

[13] Permission was granted by this Court for a Reply Brief up to 10,000 words.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17th day of October, 2011, two copies of the foregoing <u>Appellant's Reply Brief</u> was electronically filed and mailed first-class, postage prepaid to:


Kevin Karpinski, Esquire
Michael Rynd, Esquire
Karpinski, Colaresi & Karp
120 E. Baltimore Street, Suite 1850
Baltimore, MD 21201

_____/s/_____
Michael Wein, Esquire

37

## PERTINENT PROVISIONS

### 42 USCS § 1983

### § 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia

### USCS Fed Rules Civ Proc R 15

### Rule 15. Amended and Supplemental Pleadings

(a) Amendments Before Trial.

(1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) *Other Amendments.* In all other cases, a party may amend its pleading only with

the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

(3) *Time to Respond.* Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

(b) Amendments During and After Trial.

(1) *Based on an Objection at Trial.* If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.
(2) *For Issues Tried by Consent.* When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

(c) Relation Back of Amendments.

(1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;
(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
(i) received such notice of the action that it will not be prejudiced in defending on the merits;

39

and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

(2) *Notice to the United States.* When the United States or a United States officer or agency is added as a defendant by amendment, the notice requirements of Rule 15(c)(1)(C)(i) and (ii) are satisfied if, during the stated period, process was delivered or mailed to the United States attorney or the United States attorney's designee, to the Attorney General of the United States, or to the officer or agency.

(d) Supplemental Pleadings. On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

## USCS Fed Rules Civ Proc R 26

### Rule 26. Duty to Disclose; General Provisions Governing Discovery

(a) Required Disclosures.
(1) *Initial Disclosure.*
(A) In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
(ii) a copy--or a description by category and location--of all documents, electrically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
(iii) a computation of each category of damages claimed by the disclosing party-- who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from

40

disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

(B) Proceedings Exempt from Initial Disclosure. The following proceedings are exempt from initial disclosure:

(i) an action for review on an administrative record;

(ii) a forfeiture action in rem arising from a federal statute;

(iii) a petition for habeas corpus or any other proceeding to challenge a criminal conviction or sentence;

(iv) an action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision;

(v) an action to enforce or quash an administrative summons or subpoena;

(vi) an action by the United States to recover benefit payments;

(vii) an action by the United States to collect on a student loan guaranteed by the United States;

(viii) a proceeding ancillary to a proceeding in another court; and

(ix) an action to enforce an arbitration award.

(C) Time for Initial Disclosures--In General. A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan. In ruling on the objection, the court must determine what disclosures, if any, are to be made and must set the time for disclosure.

(D) Time for Initial Disclosures--For Parties Served or Joined Later. A party that is first served or otherwise joined after the Rule 26(f) conference must make the initial disclosures within 30 days after being served or joined, unless a different time is set by stipulation or court order.

(E) Basis for Initial Disclosure; Unacceptable Excuses. A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

(2) *Disclosure of Expert Testimony.*

(A) In General. In addition to the disclosures required by Rule 26(a)(1), a party

41

must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report-- prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) Witnesses Who Do Not Provide a Written Report. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

(D) Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

(i) at least 90 days before the date set for trial or for the case to be ready for trial; or

(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

(E) Supplementing the Disclosure. The parties must supplement these disclosures when required under Rule 26(e).

(3) *Pretrial Disclosures.*

(A) In General. In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:

(i) the name and, if not previously provided, the address and telephone number of each witness--separately identifying those the party expects to present and those it

may call if the need arises;

(ii) the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and

(iii) an identification of each document or other exhibit, including summaries of other evidence--separately identifying those items the party expects to offer and those it may offer if the need arises.

(B) Time for Pretrial Disclosures; Objections. Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii). An objection not so made--except for one under Federal Rule of Evidence 402 or 403--is waived unless excused by the court for good cause.

(4) *Form of Disclosures.* Unless the court orders otherwise, all disclosures under Rule 26(a) must be in writing, signed, and served.

(b) Discovery Scope and Limits.

(1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule **26(b)(2)**(C).

(2) *Limitations on Frequency and Extent.*

(A) When Permitted. By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.

(B) Specific Limitations on Electronically Stored Information. A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion

43

to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule **26(b)(2)**(C). The court may specify conditions for the discovery.

(C) When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

(3) *Trial Preparation: Materials.*

(A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

(C) Previous Statement. Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

(i) a written statement that the person has signed or otherwise adopted or approved; or

44

(ii) a contemporaneous stenographic, mechanical, electrical, or other recording--or a transcription of it--that recites substantially verbatim the person's oral statement.

(4) *Trial Preparation: Experts.*

(A) Deposition of an Expert Who May Testify. A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

(B) Trial-Preparation Protection for Draft Reports or Disclosures. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

(C) Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

(i) relate to compensation for the expert's study or testimony;

(ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

(iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

(D) Expert Employed Only for Trial Preparation. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

(i) as provided in Rule 35(b); or

(ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

(E) Payment. Unless manifest injustice would result, the court must require that the party seeking discovery:

(i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and

(ii) for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

(5) *Claiming Privilege or Protecting Trial-Preparation Materials.*

(A) Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

45

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

(B) Information Produced. If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

(c) Protective Orders.

(1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

(2) *Ordering Discovery.* If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.

46

(3) *Awarding Expenses.* Rule 37(a)(5) applies to the award of expenses.

(d) Timing and Sequence of Discovery.
(1) *Timing.* A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.
(2) *Sequence.* Unless, on motion, the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice:
(A) methods of discovery may be used in any sequence; and
(B) discovery by one party does not require any other party to delay its discovery.

(e) Supplementing Disclosures and Responses.
(1) *In General.* A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission-- must supplement or correct its disclosure or response:
(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
(B) as ordered by the court.
(2) *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

(f) Conference of the Parties; Planning for Discovery.
(1) *Conference Timing.* Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must confer as soon as practicable--and in any event at least 21 days before a scheduling conference is held or a scheduling order is due under Rule 16(b).
(2) *Conference Content; Parties' Responsibilities.* In conferring, the parties must consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan. The attorneys of record and all unrepresented parties that have appeared in the case are jointly responsible for arranging the

47

conference, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court within 14 days after the conference a written report outlining the plan. The court may order the parties or attorneys to attend the conference in person.

(3) *Discovery Plan.* A discovery plan must state the parties' views and proposals on:

(A) what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;

(B) the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;

(C) any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced;

(D) any issues about claims of privilege or of protection as trial-preparation materials, including--if the parties agree on a procedure to assert these claims after production--whether to ask the court to include their agreement in an order;

(E) what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and

(F) any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).

(4) *Expedited Schedule.* If necessary to comply with its expedited schedule for Rule 16(b) conferences, a court may by local rule:

(A) require the parties' conference to occur less than 21 days before the scheduling conference is held or a scheduling order is due under Rule 16(b); and

(B) require the written report outlining the discovery plan to be filed less than 14 days after the parties' conference, or excuse the parties from submitting a written report and permit them to report orally on their discovery plan at the Rule 16(b) conference.

(g) Signing Disclosures and Discovery Requests, Responses, and Objections.

(1) *Signature Required; Effect of Signature.* Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name--or by the party personally, if unrepresented--and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

(A) with respect to a disclosure, it is complete and correct as of the time it is made; and

48

(B) with respect to a discovery request, response, or objection, it is:

(i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

(2) *Failure to Sign.* Other parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention.

(3) *Sanction for Improper Certification.* If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.


## USCS Fed Rules Civ Proc R 54


### Rule 54. Judgments; Costs

(a) Definition; Form. "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment must not include recitals of pleadings, a master's report, or a record of prior proceedings.

(b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights

49

and liabilities.

(c) Demand for Judgment; Relief to Be Granted. A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.

(d) Costs; Attorney's Fees.

(1) *Costs Other Than Attorney's Fees.* Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

(2) *Attorney's Fees.*

(A) Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

(B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:

(i) be filed no later than 14 days after the entry of judgment;

(ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

(iii) state the amount sought or provide a fair estimate of it; and
(iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

(C) Proceedings. Subject to Rule 23(h), the court must, on a party's request, give an opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78. The court may decide issues of liability for fees before receiving submissions

on the value of services. The court must find the facts and state its conclusions of law as provided in Rule 52(a).

(D) Special Procedures by Local Rule; Reference to a Master or a Magistrate Judge. By local rule, the court may establish special procedures to resolve fee-related issues without extensive evidentiary hearings. Also, the court may refer issues concerning the value of services to a special master under Rule 53 without regard to the limitations of Rule 53(a)(1), and may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter. (E) Exceptions. Subparagraphs (A)-(D) do not apply to claims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. § 1927.

**\*\*\* CURRENT THROUGH CHANGES RECEIVED JANUARY 14, 2009 \*\*\***

**USCS Fed Rules Civ Proc R 56**

**Rule 56. Summary Judgment**

(a) By a Claiming Party. A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim.  The motion may be filed at any time after:
(1)  20  days  have  passed  from  commencement  of  the  action;  or
(2)  the  opposing  party  serves  a  motion  for  summary  judgment.

(b) By a Defending Party. A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim.

(c) Serving the Motion; Proceedings. The motion must be served at least 10 days before the day set for the hearing. An opposing party may serve opposing affidavits before the hearing day. The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

(d) Case Not Fully Adjudicated on the Motion.

51

(1) *Establishing Facts.* If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue. The court should so determine by examining the pleadings and evidence before it and by interrogating the attorneys. It should then issue an order specifying what facts--including items of damages or other relief--are not genuinely at issue. The facts so specified must be treated as established in the action.
(2) *Establishing Liability.* An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages.

(e) Affidavits; Further Testimony.
(1) *In General.* A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.
(2) *Opposing Party's Obligation to Respond.* When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

(f) When Affidavits Are Unavailable. If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1) deny the motion;
(2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
(3) issue any other just order.

(g) Affidavit Submitted in Bad Faith. If satisfied that an affidavit under this rule is submitted in bad faith or solely for delay, the court must order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt.

**USCS Fed Rules Civ Proc R 56 (2011)**

## Rule 56. Summary Judgment

(a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b) Time to File a Motion. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c) Procedures.

(1) *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.


(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
(1) give an opportunity to properly support or address the fact;
(2) consider the fact undisputed for purposes of the motion;
(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
(4) issue any other appropriate order.


(f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:
(1) grant summary judgment for a nonmovant;
(2) grant the motion on grounds not raised by a party; or
(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.


(g) Failing to Grant All the Requested Relief. If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case.


(h) Affidavit or Declaration Submitted in Bad Faith. If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court--

54

after notice and a reasonable time to respond--may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

## USCS Fed Rules Civ Proc R 59

### Rule 59. New Trial; Altering or Amending a Judgment

(a) In General.

(1) *Grounds for New Trial.* The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:

(A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or

(B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

(2) *Further Action After a Nonjury Trial.* After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

(b) Time to File a Motion for a New Trial. A motion for a new trial must be filed no later than 28 days after the entry of judgment.

(c) Time to Serve Affidavits. When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 14 days after being served to file opposing affidavits. The court may permit reply affidavits.

(d) New Trial on the Court's Initiative or for Reasons Not in the Motion. No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

(e) Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

## USCS Fed Rules Civ Proc R 60

## Rule 60. Relief from a Judgment or Order

(a) Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable;
Or

56

(6) any other reason that justifies relief.

(c) Timing and Effect of the Motion.

(1) *Timing.* A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

(2) *Effect on Finality.* The motion does not affect the judgment's finality or suspend its operation.

(d) Other Powers to Grant Relief. This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding;
(2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or

(3) set aside a judgment for fraud on the court.

(e) Bills and Writs Abolished. The following are abolished: bills of review, bills in the nature of bills of review, and writs of coram nobis, coram vobis, and audita querela

## Md. COURTS AND JUDICIAL PROCEEDINGS Code Ann. § 5-101 (2011)

### § 5-101. Three-year limitation in general

A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.